[Cite as *State v. Woodruff*, 2013-Ohio-4251.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY   COUNTY

STATE OF OHIO                               :
                                            :        Appellate Case No. 25610
          Plaintiff-Appellee                :
                                            :        Trial Court Case No. 12-CR-2951
v.                                          :
                                            :
ROBERT L. WOODRUFF                          :        (Criminal Appeal from
                                            :         Common Pleas Court)
          Defendant-Appellant               :
                                            :

. . . . . . . . . . .

O P I N I O N

Rendered on the 27th day of September, 2013.

. . . . . . . . . .

MATHIAS H. HECK, JR., by MATTHEW T. CRAWFORD, Atty. Reg. #0089205, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, P.O. Box 972, 301 West Third Street, Dayton, Ohio 45422
          Attorney for Plaintiff-Appellee

CHRISTOPHER W. THOMPSON, Atty. Reg. #0055379, 130 West Second Street, Suite 144, Dayton, Ohio 45402
          Attorney for Defendant-Appellant

. . . . . . . . . . . .

HALL, J.,

{¶ 1}     Robert L. Woodruff appeals from his conviction and sentence on three counts of

felony domestic violence in violation of R.C. 2919.25(A).

{¶ 2} Woodruff advances three assignments of error on appeal. First, he contends the trial court erred in finding two young children competent to testify under Evid.R. 601(A). Second, he claims the trial court erred in allowing a Montgomery County Children Services (MCCS) representative to testify about the agency's instructions regarding "appropriate physical discipline" and about his participation in a case plan addressing parenting and discipline. Third, he argues that prosecutorial misconduct during closing arguments deprived him of his right to a fair trial.

{¶ 3} The record reflects that Woodruff resided with L.H. (Mother) and her three children, V.F., J.H. (male), and J.H. (female). Woodruff was not the father of the children, who attended a local elementary school together. On September 28, 2012, a school employee contacted MCCS to report the possible physical abuse of nine-year-old V.F. A caseworker observed bruises on the child's face and open cuts on her lip. V.F. appeared to be shaken up and scared. A family friend picked up all three children from school and took them to her home. Multiple footprints later were observed on V.F.'s body, including one on her inner thigh.

{¶ 4} At trial, V.F. testified about several instances of abuse. First, she testified about acts that occurred on September 27, 2012. On that occasion, V.F.'s grandmother was watching her while Woodruff and Mother were at a parenting class. Upon returning home, they discovered that V.F. had been written up for her behavior on the school bus. Mother became angry and began swinging V.F. around by her hair. Woodruff then began hitting V.F. hard in the face with a rolled up paper. According to V.F., Woodruff also repeatedly slapped her face and proceeded to kick her hard and punch her. (Tr. Vol. II at 216-227).

{¶ 5} V.F. recalled an earlier incident when Woodruff had whipped her with a detached

leather purse strap. On that occasion, Woodruff discovered that she had been talking at school. As a result, he forced her to remove her clothes and whipped her naked back and "bottom" several times as hard as he could. (*Id*. at 233-235).

{¶ 6}   V.F. recalled a third incident when Woodruff had picked up her younger brother J.H. and thrown him against a wall for lying about homework. (*Id*. at 237). Finally, she testified about a fourth incident, also involving her younger brother J.H., when Woodruff had "smacked" the child in the mouth for breaking a toy, causing his lip to bleed. (*Id*. at 240-242).

{¶ 7}   V.F.'s younger brother, six-year-old J.H., testified about the two incidents of abuse involving him. J.H. testified that when he was thrown into the wall, he got a bump on the back of his head. (*Id*. at 330-331). He also confirmed that Woodruff hit his lip once, causing it to bleed. (*Id*. at 332-333).

{¶ 8}   Finally, V.F.'s younger sister, six-year-old J.H.,[1] testified that she saw Woodruff slap V.F. in the face on the day of the school-bus incident. (*Id*. at 346). After seeing the slap, J.H. went into her bedroom and continued to hear yelling. (*Id*. at 347). J.H. (female) also recalled seeing Woodruff pick up her twin brother and push him into a wall, causing him to hit his head. (*Id*. at 349-351).

---

[1] The record reflects that six-year-old J.H. (male) and six-year-old J.H. (female) are twins.

{¶ 9}    Based on the foregoing evidence, a jury found Woodruff guilty on three counts of fourth-degree-felony domestic violence. The charges were felonies because he had a prior domestic-violence conviction. Woodruff was acquitted on a fourth count.[2] The trial court imposed three seventeen-month prison sentences. It ordered two of the three terms to be served consecutively and the third to be served concurrently, resulting in an aggregate prison sentence of thirty-four months. This appeal followed.

{¶ 10}    In his first assignment of error, Woodruff contends the trial court erred in finding six-year-old J.H. (male) and six-year-old J.H. (female) competent to testify. This argument implicates Evid.R. 601(A), which provides: "Every person is competent to be a witness except * * * children under ten years of age, who appear incapable of receiving just impressions of the facts and transactions respecting which they are examined, or of relating them truly."

{¶ 11}    The foregoing language makes clear that Evid.R. 601(A) imposes two requirements for a child under ten to testify. The child must be capable of (1) receiving just impressions of the facts and (2) relating them truthfully. To assist in determining whether a child is competent to testify, the Ohio Supreme Court has directed trial courts to consider five things: "(1) the child's ability to receive accurate impressions of fact or to observe acts about which he or she will testify, (2) the child's ability to recollect those impressions or observations, (3) the child's ability to communicate what was observed, (4) the child's understanding of truth and falsity and (5) the child's appreciation of his or her responsibility to be truthful." *State v. Frazier*,

---

[2]The record reflects that Woodruff was charged with two counts of domestic violence against V.F. and two counts of domestic violence against J.H. (male). The jury convicted Woodruff of domestic violence for slapping, punching, and kicking V.F. on September 27, 2012, and for earlier whipping her with a purse strap. The jury convicted Woodruff of domestic violence against J.H. for throwing the boy against a wall. It acquitted him of domestic violence, however, for striking the boy in the mouth. (*See* Doc. #5, 31; Tr. Vol. I at 186-187; Doc. #90).

61 Ohio St.3d 247, 251, 574 N.E.2d 483 (1991).

{¶ 12}    Although the trial court examined both six-year-old children to determine their competence under Evid.R. 601(A), Woodruff complains that the inquiry failed to satisfy *Frazier*. Specifically, Woodruff contends the trial court failed to establish that J.H. (male) appreciated his responsibility to tell the truth, which is the fifth part of the *Frazier* test. Similarly, Woodruff contends the trial court "did not truly test" whether J.H. (female) appreciated her responsibility to tell the truth. Having reviewed the trial court's questioning of the children, we see no basis for reversal.

{¶ 13}    After questioning J.H. (male), the trial court asked counsel whether "there was anything else that * * * needed to be brought up, a question asked, or anything like that." (Tr. Vol. I at 62). Defense counsel did not raise any objection on the basis of *Frazier*. (*Id*. at 62-63). The failure to object has waived all but plain error with regard to the issue. We see no error here, much less plain error. Among other things, the trial court gave J.H. (male) a hypothetical in which he broke a lamp and blamed someone else. The child told the trial court that would be "wrong *  * * because it was me." (*Id*. at 58). This response implies an appreciation of the child's obligation to tell the truth.

{¶ 14}    With regard to J.H. (female), the trial court provided a similar hypothetical. After the trial court finished its conversation with the child, defense counsel challenged her competence, claiming she had not shown an understanding or appreciation of the consequences of lying. (*Id*. at 72-73). Although the distinction may be minor, what *Frazier* actually requires a court to consider, however, is a child's appreciation of the obligation to be truthful. Here the trial court gave J.H. (female) a hypothetical in which she broke a lamp and blamed someone else. She

told the trial court that this would be "wrong." (*Id*. at 69). She agreed with the trial court that it is not "fair" to blame someone for something they did not do. (*Id*.). Again, this response implies an appreciation of the child's obligation to tell the truth. We see no error in the trial court's determination that both children were competent to testify under Evid.R. 601(A). The first assignment of error is overruled.

{¶ 15} In his second assignment of error, Woodruff claims the trial court erred in allowing an MCCS representative to testify about the agency's viewpoint regarding "appropriate physical discipline" and about his participation in a case plan addressing parenting and discipline.

{¶ 16} To provide context for Woodruff's contention, we note that in opening statements, Woodruff's counsel accused the children's mother of causing the injuries to the children by excessive discipline. "There was violence perpetrated by their mother. Mr. Woodruff is not these children's father. Mr. Woodruff was not the one in charge of disciplining these children, it was the mother." (*Id*. at 188). Thereafter, one of the witnesses called by the state, MCCS representative Melissa Taylor, testified that she had been a case worker involved with Mother and her children since May 2012. (Tr. Vol. II at 276). Taylor explained that when she became involved with the family, a case plan already was in effect. (*Id*. at 279). It involved Mother and Woodruff, who was living in the home. (*Id*.). The case plan addressed parenting and discipline techniques. (*Id*.). Indeed, the trial court had just sustained an objection when the prosecutor asked Taylor whether MCCS had a "position with regard corporal punishment or physical discipline." (*Id*. at 281). The very next question was, "[W]hen you were discussing physical discipline with the children's parents or the people who are parenting the children, did you explain to them what appropriate physical discipline was?" No objection was made, the

witness responded, "Yes." (*Id.*) The prosecutor then asked, "Okay. And what is appropriate physical discipline?" The trial court overruled Woodruff's objection to that question. (*Id.*). Taylor responded that the only physical discipline MCCS considers appropriate is an open hand to a child's bottom. (*Id.*). Then, without objection, Taylor went on in the next five pages of transcript questions and answers to discuss the parenting plan and program in which both mother and Woodruff were involved. Finally, the prosecutor asked how many times Taylor had conveyed the meaning of appropriate discipline to Woodruff. (*Id.* at 286). Defense counsel objected. At a sidebar, the trial court stated:

> That does seem to be that the CSB policy on corporal punishment is really not the issue. The issue is, under the case law that has been provided me, is whether, under all the facts and circumstances, whether or not a particular form of punishment, whether it be corporal punishment or not,
> is reasonable and appropriate.
>
> And setting forth the CSB guideline about this or with this particular caseworker's guideline about that issue is setting a standard that is really best left, in my mind, to the jury.
>
> So, I'm not going to allow that.

(*Id.* at 286).

{¶ 17} On appeal, Woodruff contends the trial court erred in allowing Taylor to earlier testify that the only physical discipline MCCS considers appropriate is an open hand to a child's bottom. Woodruff argues that the agency's "bright line approach" to parental discipline was irrelevant to whether he committed domestic violence. Woodruff also argues that Taylor's

testimony about appropriate discipline risked confusing the issues and misleading the jury.

{¶ 18} Upon review, we partially agree with Woodruff but we also recognize that the trial court's analysis of the issue was correct. Whether the punishment of a child constitutes unlawful domestic violence or lawful physical discipline depends on multiple factors that cannot be reduced to uniform standard. *State v. Hause*, 2d Dist. Montgomery No. 17614, 1999 WL 959184 (Aug. 6, 1999). In *Hause*, this court held that a father's act of striking his son in the face constituted "proper and reasonable parental discipline" rather than unlawful domestic violence when viewed "with reference to all the relevant facts and circumstances." *Id.* at *3. Other cases also have upheld the use of corporal punishment that exceeded an open hand to a child's bottom. *See*, *e.g.*, *Glancy v. Spradley*, 12th Dist. Butler No. CA2012-02-024, 2012-Ohio-4224, ¶13 (upholding a finding that "switching" a child across the legs for misbehaving in kindergarten did not constitute domestic violence and was not prohibited by law). In *Ngqakayi v. Ngqakayi*, 2d Dist. Greene No. 2007CA85, 2008-Ohio-4745, this court upheld the denial of a domestic violence civil protection order despite allegations that a father excessively had spanked his child. This court reasoned: "K.N. did testify that her father had spanked her with a belt in the past. However, the magistrate and trial court could have reasonably concluded after consideration of all of the evidence on this issue that the spankings did not go beyond proper and reasonable parental discipline." *Id.* at ¶7.

{¶ 19} However, in the context of the present case, we perceive the question to which Woodruff objected, that the trial court overruled, about the "appropriate physical discipline" (an open hand to a child's bottom) was to convey what was explained to the mother and Woodruff as part of the parenting program, not to allow adoption of the CSB policy on corporal punishment as

the standard for a domestic violence prosecution. We recognize that Taylor's testimony on this point perhaps had limited relevance and risked confusing the issues and misleading the jury. Under Ohio law, "[a] parent may use physical punishment as a method of discipline without violating the domestic violence statute as long as the discipline is proper and reasonable under the circumstances. * * * Whether any particular conduct constitutes proper and reasonable parental discipline is a question that must be determined from the totality of all of the relevant facts and circumstances." (Citations omitted.) *State v. Phillips*, 10th Dist. Franklin No. 12AP-57, 2012-Ohio-6023, ¶18. "In analyzing the totality of the circumstances, a court should consider: (1) the child's age; (2) the child's behavior leading up to the discipline; (3) the child's response to prior non-corporal punishment; (4) the location and severity of the punishment; and (5) the parent's state of mind while administering the punishment." (Citations omitted.) *Id.* In this regard, we also note that in the instructions to the jury the trial court included the following:

> A parent or an individual acting as a parent may reasonably and properly discipline a child in his care. The discipline may include corporal punishment. Proper and reasonable means suitable or appropriate as opposed to extreme or excessive. The nature of any injury or the absence of such injury may be evidence concerning whether the discipline constitutes domestic violence as opposed to reasonable and proper discipline.

> Whether particular conduct constitutes proper and reasonable discipline as opposed to domestic violence must be determined from the totality of the relevant facts and circumstances.

(Tr. Vol. II at 428). Accordingly, given Woodruff's objection to the disputed question in the context of the opening statement, the particular line of questioning and the instructions

eventually given by the court, we cannot say that the trial court's overruling of the singular objection was an abuse of discretion.

{¶ 20} Even if admission of the answer to the disputed question was erroneous, we would determine that it would be harmless error for Taylor to testify, on one occasion, that the only physical discipline MCCS considers appropriate is an open hand to a child's bottom. With one possible exception, Woodruff never suggested to the jury that the acts against the children constituted proper and reasonable parental discipline. To the contrary, he essentially conceded that they did not. Although Woodruff did not testify, his attorney did not deny, in opening statements or closing arguments, that abuse had occurred. Woodruff's primary defense, as articulated through his attorney, was that Mother committed some acts and that others did not occur at all. Toward the end of his closing argument, defense counsel even told the jury: "This isn't an elements case. This isn't an elements case. You don't have to sit there and parse through the elements * * *. This is, do you believe what came out of those people's mouths". (*Id.* at 409); *see (id.* at 189) ("The question is who perpetrated it." "Her mother got abusive with her. No doubt about it, 100 percent correct. But did Mr. Woodruff do it?"); (*id*. at 191) ("It matters to [Woodruff] because it's one thing to be in a relationship with somebody who doesn't treat their children quite right. But it's another thing to be accused or perhaps convicted of crimes you didn't do." "[V.F.] was assaulted by her mother. This man is guilty of picking poor lovers."); (*id*. at 397) ("Now who picks up that cute little boy and throws him in the wall when they're not mad?"); (*id.* at 399, 407) (suggesting that J.H. (male) never really was thrown against a wall); (*id.* at 400) ("And again, here's the thing. She was abused. Her mother picked her up by the hair and slapped her.").

{¶ 21} Because Woodruff essentially conceded that the acts alleged constituted domestic

violence, arguing only that he did not commit them, Taylor's testimony about appropriate discipline almost certainly did not contribute to his convictions. Woodruff's acquittal on the charge involving striking J.H. (male) in the face is further evidence of the jury's ability to follow the law despite Taylor's testimony that Woodruff argues was objectionable.

{¶ 22} The one possible exception alluded to above concerns the charge involving Woodruff whipping V.F. with a leather strap. Although defense counsel denied that this conduct occurred, counsel alternatively argued that it did not constitute domestic violence in any event. (Tr. Vol. II at 406). Having reviewed the record, we remain convinced that Taylor's brief testimony about appropriate discipline did not contribute to the jury's finding of guilt on this charge. As set forth above, the State established that Woodruff ordered nine-year-old V.F. to remove her clothes and proceeded to whip her naked back and buttocks several times as hard as he could with a leather strap. The offense for which Woodruff inflicted this punishment was talking in school. (*Id.* at 233-235).[3] Without regard to Taylor's testimony, no serious argument can be made that this discipline was proper and reasonable under the totality of the circumstances.

{¶ 23} "'Error in the admission or exclusion of evidence in a criminal trial must be considered prejudicial unless the court can declare, beyond a reasonable doubt, that the error was harmless, and unless there is no reasonable probability that the evidence, or the exclusion of evidence, may have contributed to the accused's conviction.'" *State v. Bayless*, 48 Ohio St.2d 73, 106, 357 N.E.2d 1035 (1976), *vacated on other grounds*, *Bayless v. Ohio*, 438 U.S. 911, 98 S.Ct.

---

[3]The record also contains testimony from a Trotwood police detective that V.F. reported Woodruff striking her in the face with the leather strap. (Tr. Vol. II at 383). In her own testimony, however, V.F. did not recall telling anyone that Woodruff had used the strap on her face. (*Id.* at 252-253).

3135, 57 L.Ed.2d 1155 (1978). Here we find no reasonable probability that the admission of Taylor's testimony, about appropriate discipline contributed to any of Woodruff's convictions.

{¶ 24} As set forth above, Woodruff also complains under his second assignment of error about Taylor testifying that he participated in a case plan addressing parenting and discipline. This argument lacks merit. Woodruff did not object when Taylor testified about the case plan or the parenting and discipline objectives. (Tr. Vol. II at 279, 283-284). Other witnesses also provided unchallenged testimony about the case plan and parenting classes. (*Id*. at 214-215, 357, 360). We see no plain error with regard to this aspect of Taylor's testimony. The second assignment of error is overruled.

{¶ 25} In his third assignment of error, Woodruff argues that prosecutorial misconduct during closing arguments deprived him of his right to a fair trial. In particular, he challenges the prosecutor's remark that the parenting class he was returning home from on September 27, 2012, apparently "didn't take." (*Id.* at 395).

{¶ 26} Initially we recognize that "Generally, prosecutors are entitled to considerable latitude in opening and closing arguments." *State v. Whitfield*, 2d Dist. Montgomery No. 22432, 2009-Ohio-293, ¶ 12. *Accord State v. Ballew*, 76 Ohio St.3d 244, 255, 667 N.E.2d 369 (1996). Nevertheless, for purposes of our analysis of the issue in this case, we note that Woodruff did not object to this comment. Therefore, he has waived all but plain error. It is well settled that plain error does not exist unless an error is obvious and, but for the error, the outcome at trial "clearly would have been otherwise." *State v. Lang*, 129 Ohio St.3d 512, 2011-Ohio-4215, 954 N.E.2d 596, ¶108. This court has recognized that isolated statements in closing arguments generally are harmless. *See*, *e.g.*, *State v. Alexander*, 2d Dist. Montgomery No. 22278, 2008-Ohio-4131, ¶37, quoting *State v. Herron*, 2d Dist. Montgomery No. 19894, 2004-Ohio-773,

¶71. That is the case here. We are convinced that the prosecutor's remark about a parenting class "not taking," even if considered to be improper, did not impact the outcome of the case. Therefore, the remark did not prejudice Woodruff's rights or deprive him of a fair trial. The third assignment of error is overruled.

{¶ 27} The judgment of the Montgomery County Common Pleas Court is affirmed.

. . . . . . . . . . . . .

FAIN, P.J., and WELBAUM, J., concur.


Copies mailed to:

Mathias H. Heck
Matthew T. Crawford
Christopher W. Thompson
Hon. Michael Tucker