[Cite as *State v. Smith*, 2019-Ohio-2467.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 28083 |
| | : | |
| v. | : | Trial Court Case No. 2018-CRB-385 |
| | : | |
| CURTIS T. SMITH | : | (Criminal Appeal from |
| | : | Municipal Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 21st day of June, 2019.

. . . . . . . . . . .

CHRISTINE L. BURK, Atty. Reg. No. 0050559, 10 North First Street, Miamisburg, Ohio
45342
        Attorney for Plaintiff-Appellee

SCOTT N. BLAUVELT, Atty. Reg. No. 0068177, 315 South Monument Avenue, Hamilton,
Ohio 45011
        Attorney for Defendant-Appellant

. . . . . . . . . . . . .

FROELICH, J.

**{¶ 1}** Following a bench trial, the Municipal Court of Miamisburg found Curtis T. Smith guilty of assault, in violation of R.C. 2903.13, and sentenced him to 180 days in jail (177 days suspended), a $180 fine, and costs. Smith appeals from that judgment. The judgment of the trial court will be affirmed.

## Factual and Procedural Background

**{¶ 2}** Smith and K.L.[1] began a romantic relationship sometime in 2014. About a year later, K.L. ("Mother") and her children from a previous marriage, T.L. ("Son") and C.L. ("Daughter"), moved in with Smith. The children lived with Mother and Smith during alternating weeks; they lived with their father ("Father") the other weeks. In December 2017, Smith, Mother, Son, and Daughter moved to a mobile home in Miamisburg, Ohio.

**{¶ 3}** Monday, February 12, 2018 was Son's 11th birthday, and family members planned to celebrate that night at the home of Father's parents. According to Son, after he came home from school that day, Mother told him she had learned through an email from a teacher that Son had not given Mother his latest report card. Son testified that he had received some poor grades that quarter, and because Smith had "spanked" Son for bad grades in the past and Mother also had barred Son from playing baseball the previous year due to bad grades, Son had tried to conceal his grades from them.

**{¶ 4}** At about 5 p.m., when Smith arrived home, Smith and Mother went outside to talk. Son testified that when Smith came back inside, Smith instructed Son to go to Son's room for a "spanking." When Smith entered Son's room, he said that Son was going to be spanked for lying about doing work for a book report due soon. Son testified that he

---

[1] Smith and K.L. married at some point after the events giving rise to this case, but were not married during the relevant timeframe. (*See* Tr. pp. 6-7, 59.)

turned around and Smith "took off his belt and started to spank me on the butt," over Son's pants (Tr. p. 10); Son said the belt hit him "10 to 12 times * * * on my butt and my right and left legs on the thigh." (*Id.*, p. 11.) Smith then told Son to sit in a chair and again asked about the book report. According to Son, he had started reading for the book report, but "I lied to [Smith] and I said no, I didn't," because "I was scared that [Smith] would have whipped me more if I * * * said I read [the book for] the report." (*Id.*, p. 13.)

{¶ 5} Son said that his crying from the first spanking "was slowing down" by that time. (*Id.*) But with Son sitting in the chair, Smith "hit me on the right leg really hard with his belt." (*Id.*, p. 14.) That strike, to the middle of Son's thigh, hurt, and renewed his crying. After directing Son back to his bed, Smith again hit Son with the belt on the back of his right leg, "then I started crying even more[,] * * * so then I got whipped a few more times [with the belt] and then it stopped." (*Id.*) Smith told Son to get his homework, and Smith, Mother, Son, and Daughter headed to the birthday dinner.

{¶ 6} Son spent that night at his grandparents' house, but he did not tell anyone there about the spanking because Smith also was there, and "I was just too scared to tell them." (*Id.*) He did not tell anyone at school or elsewhere over the next two days. On Wednesday evening, however, Son told Father about the incident. Son described having "bruises wrapped around my left and right leg" by that date. On Thursday, Father took Son to the police station. A police officer interviewed Son, had him write out a statement, and took photographs of his bruises. Son said the bruising lasted "a few weeks." (*Id.*, p. 21.)

{¶ 7} Officer Shawn Todd of the Miami Township Police Department testified that he was dispatched to Father's home on February 14, 2018. Both Father and Son reported

that Son had been abused by Mother's boyfriend, Smith. Officer Todd identified several photographs he took that day, depicting bruising on Son's legs. Those photographs were admitted into evidence. Officer Todd stated that the marks he saw on Son were consistent with Son's description of the incident involving Smith. Officer Todd also took a written statement from Son.

{¶ 8} Officer Todd then went to Smith's home to question Smith. Mother answered the door and said that Smith was not there; however, moments later, Smith "stepped out from behind the kitchen wall." (Tr. p. 42.) Smith "admitted that he had spanked" Son "with a braided leather belt," but said that he "did not feel that he had lost his temper or gone overboard" with the punishment. (*Id.*, pp. 42-43.) Smith "had already printed out the O.R.C. for endangering children and presented that to me and told me he didn't feel it met the criteria for that." (*Id.*, p. 43.) At the officer's request, Smith showed Officer Todd what Smith said was the belt used; Todd said "it appeared to be an adult belt to me." (*Id.*, p. 45.) Officer Todd obtained written statements from both Smith and Mother; he did not interview Daughter.

{¶ 9} Daughter testified that on Son's birthday, Son was upset "[b]ecause he had a bad grade and he knew he was going to be spanked." (*Id.*, p. 53.) Daughter said she walked past Son's room and "took a quick glance" as Son was getting spanked. She said that Son "was bending over the bed" and Smith was "spanking" him. Daughter said that when Son came out of the room, "[h]e sniffled a little bit, but that was it." Afterward, they all went to the grandparents' house for Son's birthday party, where Son, Daughter, and a friend of Son's "just ran around and played." (*Id.*, p. 55.)

{¶ 10} Mother testified that Son's 11th birthday was going to be the first time that

Mother, Father, Son, Daughter, and other family members "had really come together for a birthday" since Mother and Father separated. (*Id.*, p. 63.) Mother said she had received an email from one of Son's teachers the previous Friday, but had decided "I wasn't going to do anything [in reaction to the email] the day of the birthday." (*Id.*, p. 64.) However, as they were preparing to leave for Son's birthday dinner at his grandparents' house, Son "started acting a little * * * different and then I asked him what was wrong and he came clean that he had been lying, that he had gotten a report card and him [sic] and his dad had agreed not to show me so that he would not get kept from baseball again, like I had done the year previous." (*Id.*) Mother told Son that she was canceling the birthday party she had planned at their home and that he could not play baseball until his grades improved.

{¶ 11} According to Mother, as she continued to confront Son about his teacher's email and Son denied having missed assignments, Smith arrived home. She and Smith talked outside, then told Son he would be spanked "if he didn't tell the truth," but Son "just kept to his story." (*Id.*, p. 67.) Mother said she asked Smith to spank Son because her spankings had no effect. She said that Smith had spanked Son once previously, for bad grades, and Son's grades thereafter went "from F's to A's." (*Id.*, p. 68.) Mother was in the living room while Smith spanked Son and she heard "[n]ot a lot" of crying; "it was just like a whimper." (*Id.*, p. 70.) Mother said Son "sniffled a little bit" when he came out of his room (*id.*, p. 71), but was ready to go to his grandparents' house for his birthday gathering, where he was "running around," "playing tag," and "climbing," and made no complaints. (*Id.*, p. 72.)

{¶ 12} When defense counsel asked whether Mother had experienced prior

"discipline issues" with Son, the trial court sustained the State's objection, finding that the question ventured "outside the scope" of relevancy. (*Id.*, p. 73.) However, Mother testified that lesser forms of discipline had not worked with Son. She also said she believed that Son bruises easily, and that she previously had seen Son have sports-related bruises similar to those depicted in the photographs admitted into evidence.

**{¶ 13}** Smith then took the stand in his own defense. He testified that Son and Daughter "have been a big part of my life" since Smith's relationship with Mother began. (Tr. p. 86.) He said that on February 12, 2018, Mother met him in the driveway when he came home from work, saying she'd learned that Son had not been turning in assignments at school. Smith went to talk to Son in Son's room, where Son "got spanked for lying, it wasn't because he got a bad grade." (*Id.*, p. 91.)

**{¶ 14}** Smith said that before spanking Son, he told Son that Son's birthday party at their house was canceled and that Son would be expected to prepare a daily "essay" about the chapter he read each day for his book report. When Son "finally" admitted "he didn't even read the book," Smith told him to "bend over the bed." (*Id.*, p. 92.) Smith testified that he "just grabbed a belt" out of Son's closet and "swatted [Son] two times on the butt." (*Id.*, pp. 94-95.) Because Son then "kept denying the whole thing," Smith hit him "probably four or five times total maybe." (*Id.*, p. 95.) Smith said Son "was crying, sobbing," but "it wasn't anything bad." (*Id.*) He denied hitting Son with the belt while Son was sitting in the chair or hitting Son across the leg. Smith said that after the spanking, he drove the group to the birthday party at the home of the children's grandparents, where Son did not seem to be in any discomfort or pain.

**{¶ 15}** Smith testified that he had spanked Son on one other occasion, for getting

an F on his report card, and that Son afterward "had A's at the end of the year." (*Id.*, p. 99.) Smith said that when he was young, his grandmother "whipped me with a belt one time." (*Id.*, p. 101.) He acknowledged "it hurt" (*id.*), but he said that the injuries depicted in the photographs of Son "wouldn't hurt me." (*Id.*, p. 103.) Asked if those photographs showed "a reasonable result of discipline," Smith replied, "I don't think anybody would think that's reasonable." (*Id.*, p. 104.) However, Smith denied that he caused the bruises depicted. (*Id.*)

**{¶ 16}** Smith was charged with a single first-degree misdemeanor count of assault in violation of R.C. 2903.13. Following a bench trial at which witnesses presented the testimony and other evidence summarized above, the trial court found Smith guilty of that offense. (Doc. #13.) On August 1, 2018, the trial court sentenced Smith to 180 days in jail, with 177 days suspended; a $180 fine; and costs. (Doc. #15.) The trial court stayed that judgment pending Smith's appeal. (Doc. #17.)

**{¶ 17}** Smith appeals from the trial court's judgment, setting forth three assignments of error:

1) The evidence was insufficient to support [Smith]'s conviction for assault;

2) [Smith]'s conviction for assault was contrary to the manifest weight of the evidence; and

3) The trial court erred to the prejudice of [Smith] and abused its discretion in excluding evidence of prior disciplinary problems with [Son].

**Assignments of Error #1 & #2 – Insufficient Evidence/Manifest Weight of Evidence**

*a. Standard of Review*

**{¶ 18}** "A sufficiency of the evidence argument disputes whether the State has

presented adequate evidence on each element of the offense to allow the case to go to the jury or sustain the verdict as a matter of law." *State v. Wilson*, 2d Dist. Montgomery No. 22581, 2009-Ohio-525, ¶ 10, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). The relevant inquiry is whether any rational finder of fact, after viewing the evidence in a light most favorable to the State, could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Dennis*, 79 Ohio St.3d 421, 430, 683 N.E.2d 1096 (1997). A guilty verdict will not be disturbed on appeal unless "reasonable minds could not reach the conclusion reached by the trier-of-fact." *Id.*

**{¶ 19}** In contrast, when reviewing an argument challenging the weight of the evidence, an appellate court reviews the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether, in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

**{¶ 20}** Because the trier of fact sees and hears the witnesses at trial, we must defer to the factfinder's decisions whether, and to what extent, to credit the testimony of particular witnesses. *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 WL 476684 (Aug. 22, 1997). The fact that the evidence is subject to different interpretations does not render the conviction against the manifest weight of the evidence. *Wilson* at ¶ 14. A judgment of conviction should be reversed as being against the manifest weight of the evidence only in exceptional circumstances. *Martin* at 175.

*b.  Assignment of Error #1 – Smith's Insufficient Evidence Challenge*

{¶ 21} Smith's first assignment of error contends that his assault conviction was not supported by sufficient evidence, because Smith purportedly was acting in loco parentis in disciplining his girlfriend's son and used "reasonable and proper physical measures" to impose that discipline. Smith argues that the trial court erred by failing to recognize Smith's in loco parentis status and the reasonableness of the "spanking" he administered.

{¶ 22} The assault statute under which Smith was convicted provides in part: "(A) No person shall knowingly cause or attempt to cause physical harm to another * * *." R.C. 2903.13. For purposes of R.C. 2903.13, "[a] person acts knowingly, regardless of purpose, when the person is aware that [his or her] conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B). "When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person subjectively believes that there is a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact." *Id.*

{¶ 23} "Physical harm" means "any injury, illness, or other physiological impairment, regardless of its gravity or duration." R.C. 2901.01(A)(3). According to the Supreme Court of Ohio, "injury" contemplates "[t]he invasion of any *legally protected interes*t of another," and "[a] child does not have any legally protected interest which is invaded by proper and reasonable parental discipline." (Emphasis sic.) *State v. Suchomski*, 58 Ohio St.3d 74, 75, 567 N.E.2d 1304 (1991). "Therefore, a parent may use physical punishment as a method of discipline without violating [criminal law] as long as the discipline is proper and reasonable under the circumstances." *Collier v. Bayless*, 2d Dist. Montgomery No. 27958, 2018-Ohio-3922, ¶ 21, quoting *State v. Thompson*, 2d Dist.

Miami No. 04CA30, 2006-Ohio-582, ¶ 29, citing *State v. Adaranijo*, 153 Ohio App.3d 266, 2003-Ohio-3822 (1st Dist.).

{¶ 24} Still, punishment of a child that exceeds the bounds of "reasonable corporal punishment" may constitute assault. *See, e.g., City of Lorain v. Prudoff*, 9th Dist. Lorain No. CIV.A. 93CA005684, 1994 WL 709667 (Dec. 21, 1994) (affirming assault conviction under R.C. 2903.13 of defendant who physically disciplined 14-year-old daughter of woman defendant was dating); *State v. Hoover*, 5 Ohio App.3d 207, 210-211, 450 N.E.2d 710 (6th Dist.1982).[2] "Although * * * parents have the right of restraint over their children and the duty of correcting and punishing them for misbehavior, 'such punishment must be reasonable and not exceed the bounds of moderation and inflict cruel punishment.' " *Murray v. Murray*, 89 Ohio App.3d 141, 146, 623 N.E.2d 1236 (8th Dist.1993), quoting *In re Schuerman*, 74 Ohio App.3d 528, 531, 599 N.E.2d 728 (3d Dist.1991).

{¶ 25} We have applied an analysis that would except reasonable parental discipline from criminal culpability in cases involving charges brought under Ohio's domestic violence statute, R.C. 2919.25.[3] *See, e.g., State v. Woodruff*, 2d Dist.

---

[2] *Hoover* involved a criminal conviction of assault. *Hoover* at 207. However, the defendant who administered the corporal punishment in *Hoover* was a school administrator, which implicated additional statutory provisions not relevant in this case. *See id.* at 212.

[3] In closing argument, Smith's trial counsel argued that Smith was "asserting an affirmative defense that he was properly disciplining the child . . ." (Tr. p. 108.) We also recognized reasonable parental discipline as an affirmative defense in *Thompson*, 2d Dist. Miami No. 04CA30, 2006-Ohio-582, at ¶ 33. However, appellate courts in Ohio have reached differing conclusions as to whether the State bears the burden of showing that particular punishment amounted to "unreasonable parental discipline" or whether "reasonable parental discipline" is an affirmative defense to be proven by a criminal defendant. *Compare, e.g., State v. Rosa*, 2013-Ohio-5867, 6 N.E.3d 57, ¶ 3 (7th Dist.) (proof of unreasonable parental discipline is element of offense as to which State bears burden) *with State v. Faggs*, 5th Dist. Delaware No. 17 CAA 10 0072, 2018-Ohio-3643, ¶ 16 ("proper and reasonable parental discipline can be employed by a defendant as an

Montgomery No. 25610, 2013-Ohio-4251, ¶ 19 ("[a] parent may use physical punishment as a method of discipline without violating the domestic violence statute as long as the discipline is proper and reasonable under the circumstances"); *Thompson* at ¶ 28 ("the domestic violence statute does not prohibit a parent from properly disciplining his or her child"); *State v. Hause*, 2d Dist. Montgomery No. 17614, 1999 WL 959184, *2 (Aug. 6, 1999) ("conduct which constitutes proper and reasonable parental discipline cannot form the basis of a violation of R.C. 2919.25(A), the resulting bodily injury notwithstanding").

**{¶ 26}** Although Smith was convicted of assault rather than domestic violence,[4] the foregoing cases illustrate that in order to be entitled to the benefit of the exception for reasonable parental discipline, Smith must have been both acting in the capacity of a parent and imposing "proper and reasonable" physical punishment. *See Woodruff* at ¶ 19. Because the record contains sufficient evidence to establish that the "spanking" Smith administered was not "proper and reasonable," we need not address the trial court's finding that Smith "did not stand in loco parentis with respect to the victim." (Exh. 9, p. 3.)

**{¶ 27}** Determining whether particular conduct constitutes proper and reasonable parental discipline requires consideration of "the totality of all of the relevant facts and circumstances." *Woodruff* at ¶ 19, quoting *State v. Phillips*, 10th Dist. Franklin No. 12AP-

affirmative defense"). The Supreme Court of Ohio recently certified a conflict on that issue. *State v. Faggs*, 154 Ohio St.3d 1476, 2019-Ohio-169, 114 N.E.3d 1204. Regardless, since we find the State's evidence here sufficient to show that Smith's actions were not "proper and reasonable parental discipline," we will not weigh in on that conflict.

[4] "Physical harm caused to *another* is an assault, R.C. 2903.13; physical harm caused to a *family or household member* is domestic violence, R.C. 2919.25." (Emphasis sic.) *State v. Carswell*, 114 Ohio St.3d 210, 2007-Ohio-3723, 871 N.E.2d 547, ¶ 29. "The conduct of the accused is the same in both instances." *Id.*

47, 2012-Ohio-6023, ¶ 18. "In analyzing the totality of the circumstances, a court should consider: (1) the child's age; (2) the child's behavior leading up to the discipline; (3) the child's response to prior non-corporal punishment; (4) the location and severity of the punishment; and (5) the parent's state of mind while administering the punishment." *Id.*

{¶ 28} "[T]he nature of any physical injury inflicted * * * may be evidence demonstrating that the actor's conduct was not proper and reasonable parental discipline." *Thompson*, 2d Dist. Miami No. 04CA30, 2006-Ohio-582, at ¶ 29, citing *Hause*, 2d Dist. Montgomery No. 17614, 1999 WL 959184. Bruising alone may be insufficient to show that a particular form of discipline created a substantial risk of serious physical harm. *See State v. Neal*, 4th Dist. Lawrence Nos. 14CA31, 14CA32, 2015-Ohio-5452, ¶ 45, citing *In re Schuerman*, 74 Ohio App.3d 528, 532, 599 N.E.2d 728. Nevertheless, "[d]iscipline methods on a child which leave recognizable bruising and cause pain which lasts beyond the time immediately following an altercation between parent and the child may establish a finding of substantial risk of serious harm." *Id.*, quoting *In re Kristen*, 6th Dist. Ottawa No. OT-07-031, 2008-Ohio-2994, ¶ 69. Further, under R.C. 2903.13, " 'serious physical harm' is not required" in order to satisfy the elements of assault. *State v. Melton*, 8th Dist. Cuyahoga No. 94128, 2010-Ohio-5352, ¶ 16. "Evidence of bruising is sufficient evidence to support an assault conviction." *State v. Moore*, 2d Dist. Montgomery No. 18337, 2001 WL 28670, *2 (Jan. 12, 2001).

{¶ 29} In *K.A. v. A.V.*, 2d Dist. Champaign No. 2018-CA-12, 2018-Ohio-4144, we affirmed the trial court's granting of a domestic violence civil protection order against a father who admitted to "tapping" his eight-year-old son's buttocks with a belt. There, the evidence showed that the "significant bruising" caused by the belt remained for weeks.

Under the totality of the circumstances, we determined that a reasonable trier of fact could conclude that the father's actions "did not constitute 'proper and reasonable parental discipline.' " *Id.* at ¶ 26. In support of that conclusion, we cited an earlier criminal case in which we affirmed the child endangering conviction of a defendant who struck his girlfriend's eight-year-old daughter with a belt, "leaving welts on the child's legs and buttocks." *Id.*, citing *State v. Royster*, 2d Dist. Montgomery No. 25870, 2015-Ohio-3608, ¶ 30-31.

{¶ 30} Other courts have found that corporal punishment constituted unreasonable discipline in cases involving comparable evidence of physical harm. For example, the Twelfth District Court of Appeals affirmed the assault conviction of a defendant who admitted to "spanking" his girlfriend's five-year-old step-granddaughter "twice on her buttocks with a belt," where evidence showed the punishment left "numerous bruises." *Fairfield v. Terry*, 12th Dist. Butler No. CA99-12-213, 2000 WL 929675, *1-2 (Jul. 10, 2000). Similarly, the Eighth District affirmed the domestic violence convictions of a mother who "spanked" her 11-year-old son with a belt "a couple of times" for repeated "dishonesty at school," leaving welts and bruising visible on the boy's legs and torso the following day. *State v. Jones*, 140 Ohio App.3d 422, 429, 747 N.E.891 (8th Dist.2000). Both courts found the evidence sufficient to show that the punishment inflicted exceeded the bounds of reasonable discipline.

{¶ 31} In this case, 11-year-old Son testified that Smith struck Son across his buttocks and the back of his thighs "10 to 12 times" with a belt while Son was bent over his bed. (Tr. p. 11.) Smith admitted that he had "spanked" Son's buttocks with a belt "probably four or five times total maybe." (*Id.*, p. 95.) Son also claimed that Smith used

the belt to hit Son once across the front of his right thigh while Son was seated in a chair (a claim that Smith denied), and that the belt strikes "hurt." Smith testified that the punishment was provoked by Smith's and Mother's perception that Son was lying about homework assignments Son had failed to complete; Son denied that he lied about those assignments, but admitted that he had hidden a report card with unfavorable grades from Mother and Smith. A police officer testified to photographing extensive bruising on the back of Son's thighs and the front of Son's right thigh two days after the "spanking" occurred. That officer further opined that the bruising he observed was consistent with Son's report of the incident, and Son testified that the bruises were the result of Smith's "spanking."

{¶ 32} Viewing that evidence under the totality of the circumstances and in a light most favorable to the State, we conclude that a rational trier of fact could have found the essential elements of the crime of assault proven beyond a reasonable doubt. The pain and bruising Son experienced was "physical harm" within the meaning of R.C. 2903.13, and Smith acted "knowingly" by using a belt to cause that harm. Further, a rational trier of fact could conclude that the degree of physical punishment so imposed was not "proper and rational discipline" of an 11-year-old boy for lying about school work. *Compare Hause*, 2d Dist. Montgomery No. 17614, 1999 WL 959184 (where father struck 17-year-old son who previously threatened father with hedge trimmers and threatened to kill father for disciplining him).

{¶ 33} Smith's first assignment of error challenging the evidence against him as insufficient is overruled.

   *c. Assignment of Error #2 – Smith's Manifest Weight of the Evidence Challenge*

{¶ 34} Smith's challenge to his assault conviction as being against the manifest weight of the evidence likewise is not well taken. Again relying on the premise that his punishment of Son amounted to proper and reasonable parental discipline, Smith argues that his conviction created a miscarriage of justice.

{¶ 35} Smith does not dispute that the evidence presented against him satisfies the elements of assault under R.C. 2903.13 unless Smith's conduct was exempted as "proper and reasonable parental discipline" in accordance with R.C. 2919.22(B)(3). Having reviewed the entire record, we are unable to conclude that the greater weight of the credible evidence showed that Smith imposed only "proper and reasonable" discipline, such that Smith's conviction created a miscarriage of justice.

{¶ 36} When asked whether the bruising depicted in the photographs of Son admitted into evidence showed "a reasonable result of discipline," Smith replied, "I don't think anybody would think that's reasonable." (Tr. p. 104.) We agree. Although Smith denied that he was responsible for the bruises shown, the manifest weight of the evidence does not substantiate his denial. Son testified that Smith caused those bruises, which were photographed by a disinterested police officer only two days after the "spanking" with a belt that Smith admits to having administered. Son also denied having engaged in any other activity that could have been the source of that bruising.

{¶ 37} While Mother testified that Son bruises easily and has exhibited similar bruising from sports-related activities, we must defer to the trial court's assessment of the credibility of her testimony to that effect. *See Lawson*, 2d Dist. Montgomery No. 16288, 1997 WL 476684. Mother offered no specific alternative explanation for Son's bruises, and the trial court apparently did not find persuasive her attempt to divert blame from

Smith, her now-husband. Although Mother suggested that Son had "just got[ten] a spanking from his father" (Tr. p. 84), implying that Father may have caused the bruises, no proper foundation was laid for Mother's knowledge of any such spanking, and Son expressly denied that Father or anyone else had spanked him between Smith's spanking and the photographs of Son's bruises. (Tr. p. 19.) The trial court was entitled to discount Mother's implication on either hearsay or credibility grounds.

{¶ 38} Our assessment of the weight of the evidence is unchanged by Sister's, Mother's, and Smith's additional testimony that Son was wearing a coat at the time of the spanking. (*See* Tr. pp. 54, 70, 95, and Exhs. C & D.) Photographs of the coat Son purportedly was wearing when Smith spanked him depict a thigh-length winter jacket that is pulled above Son's thighs in a photograph in which Son's arms are raised. (*See id.,* Exhs. C & D.) Even were the trial court to believe that Son was wearing that coat while he was bent across his bed during the spanking, such evidence would not compel a conclusion that the coat was sufficiently long and heavy to prevent a belt from causing the bruising to Son's thighs depicted in the police photographs. Further, although 10-year-old Sister said she recalled Son wearing "[h]is coat" when he was spanked, she was "not sure" if he was wearing pants or if she was wearing a coat at that time (Tr. 54), raising doubt about the credibility of her testimony as well as Mother's testimony that Son already was wearing his coat and ready to leave with the family before Smith sent Son to his bedroom. We cannot say that the trial court lost its way by finding that Son's bruises were caused by Smith's use of the belt.

{¶ 39} Smith's challenge to his conviction as being contrary to the manifest weight of the evidence is overruled.

**Assignment of Error #3 – Improper Exclusion of Evidence**

*a. Standard of Review*

**{¶ 40}** Because a trial court exercises discretion in deciding whether to exclude or admit evidence, we review such decisions under an abuse of discretion standard. *State v. Morris,* 132 Ohio St.3d 337, 2012-Ohio-2407, 972 N.E.2d 528, ¶ 19; *State v. Brown,* 2d Dist. Montgomery No. 27571, 2018-Ohio-3294, ¶ 17. "Generally, abuse of discretion occurs when a decision is grossly unsound, unreasonable, illegal, or unsupported by the evidence." *State v. Nichols,* 195 Ohio App.3d 323, 2011-Ohio-4671, 959 N.E.2d 1082, ¶ 16 (2d Dist.); *State v. Beechler,* 2d Dist. Clark No. 09CA54, 2010-Ohio-1900, ¶ 60-70. A decision is unreasonable if there is no sound reasoning process that would support that decision. *State v. Jones,* 2d Dist. Montgomery Nos. 25315 & 25316, 2013-Ohio-1925, ¶ 32; *State v. LeGrant,* 2d Dist. Miami No. 2013-CA-44, 2014-Ohio-5803, ¶ 7. Review for an abuse of discretion is deferential, and an appellate court may not simply substitute its judgment for that of the trial court. *State v. Darmond*, 135 Ohio St.3d 343, 2013-Ohio-966, 986 N.E.2d 971, ¶ 34.

**{¶ 41}** As to evidentiary rulings, the rules of evidence provide:

Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected; and

* * *

(2) *Offer of Proof.* In case the ruling is one excluding evidence, the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked. * * *

Evid.R. 103(A).

**{¶ 42}** The purpose of a proffer under Evid.R. 103(A)(2) "is to assist the reviewing court in determining whether the trial court's exclusion of evidence affected the defendant's substantial rights." *State v. Conkle*, 2d Dist. Montgomery Nos. 24161, 24163, 2012-Ohio-1772, ¶ 35, citing *State v. Mullins,* 2d Dist. Montgomery No. 21277, 2007-Ohio-1051, ¶ 36. A defendant who fails to make a proffer regarding the anticipated nature of excluded testimony "and how it would have been relevant and material to the defense" is left unable to demonstrate how he was prejudiced by the exclusion of that evidence. *State v. Earnest*, 2d Dist. Montgomery No. 20124, 2004-Ohio-4049, ¶ 43. Thus, a failure to make a proffer of evidence waives all but plain error. *State v. York*, 2018-Ohio-612, 107 N.E.3d 672, ¶ 33 (2d Dist.). *See also State v. Taylor*, 98 Ohio St.3d 27, 2002-Ohio-7017, 781 N.E.2d 72, ¶ 60 (defendant who failed to proffer expert testimony "waived his right to complain about [underlying] issue").

*b. Analysis*

**{¶ 43}** In his final assignment of error, Smith maintains that the trial court erred by excluding Mother's testimony on direct examination about disciplinary problems she experienced with Son prior to the spanking incident that led to charges against Smith.

**{¶ 44}** The record records that evidentiary ruling as follows:

[Defense Counsel]: Have you had disciplinary issues with [Son] in the past?

[Mother]: Yes.

[Defense Counsel]: Like what?

Prosecutor: Objection. Kind of outside the scope of relevancy.

The Court: I think it is outside the scope, I have to agree.

(Tr. p. 73.)

**{¶ 45}** Smith's attorney did not thereafter offer into the record what Mother would have said about her prior disciplinary issues with Son. That omission waived all but plain error stemming from the exclusion of Mother's testimony on that subject. *See York* at ¶ 33, *Taylor* at ¶ 60. The burden of demonstrating plain error is on the party asserting it, and a reversal is warranted only if that party can prove that the outcome "would have been different absent the error." *State v. Rhines*, 2d Dist. Montgomery No. 24203, 2011-Ohio-3615, ¶ 21, quoting *State v. Hill*, 92 Ohio St.3d 191, 203, 2001-Ohio-141, 749 N.E.2d 274.

**{¶ 46}** The record does not support a conclusion that the exclusion of Mother's testimony about prior disciplinary issues with Son amounted to plain error. Despite the trial court's ruling, Mother continued to testify that other forms of punishment – e.g., "time out, grounding [Son] from electronics, taking away free time, * * * grounding [him] from going certain places, * * * taking away things, his tablet, * * * play stations, * * * even * * * counseling * * *" – had not been as effective with Son as spanking. (Tr. p. 73.) Accordingly, regardless of the nature of Son's disciplinary issues that provoked the use of such other forms of punishment, the defense was able to admit evidence that non-corporal punishment had been tried in the past but failed to cause Son to modify his behavior. We cannot say that evidence of the reasons for punishing Son in the past would have resulted in a different outcome to Smith's trial.

**{¶ 47}** Smith's third assignment of error is overruled.

## Conclusion

**{¶ 48}** The judgment of the trial court will be affirmed.

. . . . . . . . . . . . .

DONOVAN, J. and TUCKER, J., concur.


Copies sent to:

Christine L. Burk
Scott N. Blauvelt
Hon. Robert W. Rettich, III