[Cite as *State v. Sizemore*, 2019-Ohio-4186.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 28151 |
| | : | |
| v. | : | Trial Court Case No. 2018-CRB-4916 |
| | : | |
| RONDA SIZEMORE | : | |
| | : | (Criminal Appeal from |
| Defendant-Appellant | : | Municipal Court) |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 11th day of October, 2019.

. . . . . . . . . . .

TROY B. DANIELS, Atty. Reg. No. 0084957, Dayton Municipal Prosecutor's Office, 335 West Third Street, Room 372, Dayton, Ohio 45402
        Attorney for Plaintiff-Appellee

TRAVIS KANE, Atty. Reg. No. 0088191, 130 West Second Street, Suite 460, Dayton, Ohio 45402
        Attorney for Defendant-Appellant

. . . . . . . . . . . .

HALL, J.

{¶ 1} Ronda Sizemore was convicted in Dayton Municipal Court of assaulting one of her neighbors. She argues that the state failed to prove its case. We disagree and affirm.

## I. Facts and Procedural History

{¶ 2} The incident occurred on August 8, 2018. Sizemore was arrested the same day and charged with one count of assault under R.C. 2903.13(A), a first-degree misdemeanor. She pleaded not guilty, and a bench trial was held.

{¶ 3} At the trial, the victim, Allise Fugate, testified that Sizemore lived behind her in a Dayton neighborhood. The two properties were separated by Fugate's garage and an "open" fence. Fugate said that, on August 8, around 10:30 a.m., she was in her backyard with her dog, where she had been for about 15 minutes. She was facing her house when suddenly she felt a hand grab her arm, above her elbow. Sizemore had entered the yard and was squeezing Fugate's arm. About Sizemore's grip, Fugate said: "It hurt. * * * It hurt really bad." (Tr. 17.) Fugate presented photographs she had taken of bruises on her arm that she said Sizemore caused. (State's Exhibit 1.) Sizemore then pulled Fugate to the ground. (Fugate was seven months pregnant at that time.) Fugate landed on her back and bottom in muddy water, and she testified that this too "hurt really bad." (Tr. 18.) Sizemore then started calling Fugate names and accused her of stealing her pants. According to Fugate, Sizemore had accused her and her husband of stealing Sizemore's pants five or six other times too. Fugate denied that she or her husband had ever stolen Sizemore's pants. While on the ground, Fugate called for help and for someone to call the police. Sizemore then ran back inside her own home.

{¶ 4} Fugate's niece, Haley Mobley, was walking with a friend nearby when she

heard Fugate yelling. Mobley testified about what she saw. She said that when she looked into her aunt's backyard, she saw Sizemore in front of Fugate holding Fugate's upper arm and then saw Sizemore push Fugate to the ground. She heard Sizemore call her aunt names and say something about pants. Mobley yelled for her grandmother, who was on the porch. Mobley then saw Sizemore run back into her own home. Mobley said that Sizemore later came back out and started throwing things.

{¶ 5} The police were called, and two Dayton police officers responded. One of the officers, Officer Lyn Dunkin, testified at the trial. Officer Dunkin had heard Fugate's testimony about what had happened, and he said that it was essentially the same story that she told him that day. Dunkin also said that, while he talked to Fugate that day, he noticed that the back side of her shorts and shirt were wet and muddy. He also talked to Sizemore, who he noted was "very excited and demonstrative, non-stop talking." (Tr. 53.)

{¶ 6} The defense did not present any witnesses.

{¶ 7} The trial court found Sizemore guilty of assault and sentenced her to 180 days in jail with 143 days suspended and 37 days credited; it also imposed a $50 fine and $120 in court costs.

{¶ 8} Sizemore appeals.

## II. Analysis

{¶ 9} The sole assignment of error asserts:

THE CONVICTION MUST BE REVERSED BECAUSE IT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 10} When reviewing a claim challenging the manifest weight of the evidence, "the appellate court sits as a 'thirteenth juror' " and, reviewing the entire record, weighs

the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). " 'The discretionary power to grant a new trial should be exercised only in the exceptional case in which evidence weighs heavily against the conviction.' " *Id.*, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). "Because the trier of fact sees and hears the witnesses at trial, we must defer to the factfinder's decisions whether, and to what extent, to credit the testimony of particular witnesses." *State v. Smith*, 2d Dist. Montgomery No. 28083, 2019-Ohio-2467, ¶ 20, citing *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 WL 476684 (Aug. 22, 1997).

{¶ 11} Sizemore was convicted of violating R.C. 2903.13(A), which states that "[n]o person shall knowingly cause or attempt to cause physical harm to another or to another's unborn." "Physical harm to persons" is statutorily defined as "any injury, illness, or other physiological impairment, regardless of its gravity or duration." R.C. 2901.01(A)(3).

{¶ 12} The state presented sufficient credible evidence that Sizemore knowingly harmed Fugate. Fugate testified that Sizemore grabbed her arm, squeezed it hard enough to leave bruises, and then pulled her to the ground. Fugate also testified that Sizemore's grip on her arm and hitting the ground "hurt really bad." Officer Dunkin confirmed Fugate's account as the same one that she had given him, and he noted that, consistent with her account, the back of her shorts and shirt were wet and muddy.

{¶ 13} Sizemore argues that Fugate's testimony contradicted and was inconsistent

with Mobley's testimony. Sizemore cites several examples: Fugate testified that Sizemore pulled her down from behind, but Mobley testified that Sizemore pushed Fugate down from the front; Fugate testified that Sizemore went into her house and did not come back out, but Mobley testified that Sizemore went into her house and came back out and started throwing things; Fugate could not describe what Sizemore was wearing, but Mobley said she was wearing shorts and possibly a yellow, orange, or green shirt, and Officer Dunkin said that Sizemore was wearing blue jeans and a yellow shirt; and Fugate testified that her clothes were wet and muddy, but Mobley testified that she noticed nothing out of place with Fugate's appearance or clothes. Sizemore also asserts that Mobley was biased because Fugate was a relative and friend and she (Mobley) wanted to help her and help get a favorable outcome for her. Mobley said that a lot of her family lived in the same area as Fugate and that they thought of Sizemore as an outsider. According to Sizemore, this testimony and the contradictions showed that Mobley was not credible.

{¶ 14} In the end, Mobley's testimony was not essential to a finding of guilt. Even without her testimony there was ample evidence from which to find Sizemore guilty. Indeed, for all we know, the trial court may have simply disregarded most of what Mobley said.

{¶ 15} All the evidence supported the trial court's finding that Sizemore knowingly caused, or attempted to cause, physical harm to Fugate. This case does not approach the exceptional case in which the evidence weighs heavily against conviction.

{¶ 16} We note that while the assignment of error and most of Sizemore's argument presents a manifest-weight challenge, the last paragraph of her argument inexplicably refers to the sufficiency of the evidence. "Where an appellate court

determines that a conviction is not against the manifest weight of the evidence, the conviction is necessarily based on legally sufficient evidence." (Citations omitted.) *State v. Webber*, 2015-Ohio-2183, 35 N.E.3d 961, ¶ 9 (2d Dist.). By concluding that Sizemore's assault conviction was not against to the manifest weight of the evidence, we also conclude that the conviction was supported by sufficient evidence.

{¶ 17} The sole assignment of error is overruled.

### III. Conclusion

{¶ 18} The municipal court's judgment is affirmed.

. . . . . . . . . . . . .

WELBAUM, P.J. and DONOVAN, J., concur.

Copies sent to:

Troy B. Daniels
Travis Kane
Hon. Christopher D. Roberts