OPINION
{¶ 1} William Lee Earnest was convicted after a bench trial in the Montgomery County Court of Common Pleas of one count of felonious assault, in violation of R.C. 2903.11(A)(1), a felony of the second degree. He received a sentence of two years of incarceration.
 {¶ 2} Earnest presents three assignments of error on appeal.
 {¶ 3} "I. Whether the trial court erred to the Appellant's detriment when it entered a guilty verdict against the manifest weight of the evidence."
 {¶ 4} In his first assignment of error, Earnest claims that his conviction for felonious assault is against the manifest weight of the evidence. He argues that the state has not proven that Earnest knowingly caused serious physical harm to another, and he claims that his actions were justifiable as self-defense. In particular, Earnest argues that Weaver had attacked him with a metal bar and that he had properly defended himself.
 {¶ 5} When a conviction is challenged on appeal as being against the manifest weight of the evidence, we must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v.Thompkins, 78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541, citing State v. Martin (1983), 20 Ohio App.3d 172, 175,485 N.E.2d 717. Because the trier of fact sees and hears the witnesses and is particularly competent to decide "whether, and to what extent, to credit the testimony of particular witnesses," we must afford substantial deference to its determinations of credibility. State v. Lawson (Aug. 22, 1997), Montgomery App. No. 16288. "Contrastingly, the decision as to which of several competing inferences, suggested by the evidence in the record, should be preferred, is a matter in which an appellate judge is at least equally qualified, by reason and experience, to venture an opinion." Id. A judgment should be reversed as being against the manifest weight of the evidence only in exceptional circumstances. Martin, 20 Ohio App.3d at 175.
 {¶ 6} The state's case consisted of the testimony of Danisha Weaver, the alleged victim, and Dayton police officer James P. Mollohan, who responded to the 911 call. According to Weaver's testimony, between 9:00 p.m. and 10:00 p.m. on November 6, 2002, Weaver went to the home of her friend, Judy Williams, who resided at 105 North Ardmore. When Weaver arrived, a woman and three men were also visiting; one man was asleep on the couch and the other two were in the kitchen. Approximately thirty minutes later, Earnest came through the back door of the house, which entered into the dining room. Williams, Weaver and the other female guest were sitting around the dining room table.
 {¶ 7} Weaver testified that, after his arrival, Earnest began talking with the men in the kitchen. When Earnest went to greet Williams, he came up behind her and put his arms around her. Williams told Earnest to "Get off me." Although Earnest and Weaver were not friends, Earnest then put his arms around Weaver and attempted to kiss her neck. Weaver told him, "I got a man." Earnest responded, "F your man." Weaver indicated that Earnest became "real aggressive" and called Williams and her names, such as "nasty B's." Weaver and Earnest began to argue. Earnest also attempted to grab the Black and Mild cigar from Williams' hand When Williams passed it to Weaver, Earnest grabbed it from Weaver. Earnest was verbally abusive and threatened to "smack" Weaver. Earnest then hit Weaver in the back of her head with his open hand Weaver grabbed a metal bar, which was a part of the back of the dining room chair. Two male guests grabbed Earnest and attempted to force him from the house. Weaver indicated that Earnest "was grabbing for me, swinging, trying to hit me, punch me." Weaver swung the metal bar toward Earnest. Earnest hit Weaver in the face with a closed fist during the tussle; Weaver may have hit Earnest with the rod. The men succeeded in pushing Earnest out of the back door.
 {¶ 8} Weaver further testified that after Earnest was ejected from the house, he continued to swear and he kicked on the back door. Williams told Earnest to leave and stated that she was going to call the police. Williams and Weaver attempted to hold the door closed. Earnest did not leave. He kicked in the door, knocked down the men in the dining room, and went after Weaver, swinging with a closed fist and saying "I'm going to get you. I'm going to beat you up. Kill you." Earnest hit Weaver on the bridge of her nose, knocking her to the floor. Weaver attempted to sit up, and Earnest punched her again in the nose. Earnest then punched Weaver as she lay on the floor. Williams then shielded Weaver's face with her body while Earnest continued to try to strike Weaver. At that time, the man on the couch grabbed Earnest and forced him out of the front door of the house.
 {¶ 9} Earnest again attempted to regain entry to the house by kicking at the door and the window next to the front door. While Earnest was still attempting to enter the home, the police arrived. Officer Mollohan testified that he had arrived with his partner, Officer Tipton, at approximately 12:30 a.m. When the officers got out of the car, Earnest fled and the officers were unable to apprehend him. When they returned to the house, they observed that the front window to the door had been broken, there was glass inside the door where the pane had been pushed or kicked in, and there were broken ceramic figurines on the living room floor. Mollohan further observed that Weaver's nose was extremely swollen, that she was having a hard time breathing and that she was bleeding profusely from her nose. Although Weaver had indicated that she had been drinking, Weaver did not show signs of intoxication.
 {¶ 10} In his defense, Earnest testified that he had arrived at Williams' home after 11:00 p.m. on November 6, 2002, to visit. He stated that he had entered through the back door, and that four or five other men were there, along with Weaver and another woman. After greeting people, Earnest sat at the dining room table and conversed. Weaver jumped up and kept saying, "I know you; I know you." Earnest responded, "No, you don't. Get out of my face" and called her a "bitch." Weaver then got mad and slapped him across the face with an open hand Earnest, surprised, hit her back with a closed fist. The male guests pulled them apart. At Williams' request, Earnest left the house.
 {¶ 11} Earnest further testified that he had attempted to reenter the house, because he had left his jacket inside. He repeatedly knocked on the door, and he was ultimately allowed inside. When he went to get his jacket, the other individuals tried to keep Weaver apart from Earnest. Earnest states that Weaver's nose was bleeding at this time. Weaver then grabbed the metal pole and swung it at him, hitting Earnest in the face and scratching his cheek. Earnest tried to get at Weaver. Although Earnest initially testified that he did not make contact, he stated on cross-examination that he may have hit Weaver again. Earnest stated that he saw Weaver fall while she was being pulled to the side. The men pushed Earnest out the front door. Earnest stated that he was still mad when he went out the front door, and he broke the window beside it.
 {¶ 12} Upon review of the record, we cannot conclude that the trial court "clearly lost its way" in concluding that Earnest had committed a felonious assault. As recognized by the court, "[t]o a large extent, the decision in this case involves a question of credibility." The trial court found that Weaver's testimony was more credible and was supported by circumstantial evidence. It was the province of the trial court to determine this matter of credibility, and we are highly deferential to the trial court's determinations. State v. Hixson, Montgomery App. No. 19868, 2004-Ohio-1308. Although the trial court could have believed Earnest's version of the events over that of Weaver, the trial court did not lose its way in choosing not to do so. Weaver's testimony was consistent with that of Officer Mollahan, who testified to the broken window and figurines and to Weaver's injury. Morever, the evidence amply supports the conclusion that Earnest had knowingly caused serious physical harm to Weaver when he repeatedly punched Weaver in the face upon reentering the house. We note that Earnest has stipulated that the injury to Weaver constituted serious physical harm within the meaning of R.C. 2903.11(A)(1).
 {¶ 13} We further note that Earnest's self-defense argument "implicitly concede[s] that his actions satisfy the elements of the crime of felonious assault." State v. Moore, Montgomery App. No. 20005, 2004-Ohio-3398, at ¶ 51. By crediting Weaver's version of events, the trial court necessarily found that Weaver was not the initial aggressor and that Earnest had not acted out of self-defense when he repeatedly struck her upon reentering the house. We find no fault with that determination.
 {¶ 14} The first assignment of error is overruled.
 {¶ 15} "II. The appellant received ineffective assistance of counsel."
 {¶ 16} In his second assignment of error, Earnest claims that his trial counsel, Richard Nystrom, was ineffective in four ways. First, he asserts that his attorney did not adequately prepare for the case. Second, Earnest claims that his counsel improperly stipulated that the injuries sustained by Weaver constituted serious physical harm, as defined by the statute, thus relieving the state of its burden to prove that element beyond a reasonable doubt. Third, Earnest argues that his attorney twice failed to subpoena a key witness, resulting in that witness' failure to testify. Fourth, Earnest complains that his attorney failed to cross-examine Officer Mollohan.
 {¶ 17} In order to demonstrate ineffective assistance of counsel, Earnest must establish that his counsel's representation fell below an objective standard of reasonableness and that he has been prejudiced by his counsel's deficient performance, i.e., that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different. Strickland v. Washington (1984), 466 U.S. 668,104 S.Ct. 2052, 80 L.Ed.2d 674; State v. Bradley (1989),42 Ohio St.3d 136, 538 N.E.2d 373. Trial counsel is entitled to a strong presumption that his or her conduct falls within the wide range of reasonable assistance. See Strickland, 466 U.S. at 689. Hindsight is not permitted to distort the assessment of what was reasonable in light of counsel's perspective at the time, and a debatable decision concerning trial strategy cannot form the basis of a finding of ineffective assistance of counsel. See id.;State v. Parker, Montgomery App. No. 19486, 2003-Ohio-4326, ¶ 13.
 {¶ 18} Beginning with the preparedness of Earnest's trial counsel, Earnest's assertion is not supported by the record. As noted by the state, the record reflects that Earnest's counsel's lack of preparedness on June 30, 2003, was due to Earnest's lack of cooperation:
 {¶ 19} "THE COURT: We were contacted last week indicating that there may be a problem with trial starting today, Monday, because Mr. Nystrom had not had contact with his client. This morning I've been informed that, Mr. Nystrom, you were able to contact your client on Friday and have some conversation, but you need some more time to talk to him, you don't feel you're prepared to start this morning, and you're requesting that we, therefore, continue it until tomorrow morning.
 {¶ 20} "MR. NYSTROM: That's correct, Your Honor. And furthermore, this morning one of the key witnesses appeared and has made statements to the effect that the alleged victim in this matter was the initial aggressor in the incident that happened, which raises the question of whether there is a felonious assault or whether this is an aggravated assault type case. * * *
 {¶ 21} "THE COURT: Now, Mr. Earnest, were there some problems in contacting your lawyer? Was he not calling you back or something?
 {¶ 22} "THE DEFENDANT: No, sir. No, sir.
 {¶ 23} "THE COURT: So it's your fault?
 {¶ 24} "THE DEFENDANT: Yes, sir, but I had contacted him on Friday, sir.
 {¶ 25} "THE COURT: Friday — the day before the weekend.
 {¶ 26} "THE DEFENDANT: Yes, because I had seen his number in the telephone like the day before that.
 {¶ 27} "THE COURT: Mr. Earnest, you understand this is an extremely serious offense.
 {¶ 28} "THE DEFENDANT: Yes, sir.
 {¶ 29} "THE COURT: It could cost you up to eight years of your life in prison.
 {¶ 30} "THE DEFENDANT: Yes, sir.
 {¶ 31} "THE COURT: And your lawyer can only deal the cards he's dealt. You know what I mean?
 {¶ 32} "THE DEFENDANT: Yes, sir.
 {¶ 33} "THE COURT: If you don't give him cards to play, he can't do a good job for you. So you got to work with him and keep in touch with him or he can't do anything.
 {¶ 34} "THE DEFENDANT: Yes, sir."
 {¶ 35} Thus, based on the record, there is no evidence that Nystrom failed to prepare for trial diligently. Morever, we find no evidence that Nystrom was unprepared when the trial began on July 1, 2003. Earnest's first argument is without merit.
 {¶ 36} As for Earnest's second argument, we find no fault with Nystrom's decision to stipulate that Weaver's injuries constituted serious physical harm, within the meaning of R.C.2903.11(A)(1). "Serious physical harm" is defined as "[a]ny physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain." R.C. 2901.01(A)(5)(e). The record indicates that Earnest had received Weaver's medical records during discovery, and that the nature of Weaver's injury was not in question. Thus, Nystrom's decision to stipulate that Weaver's injuries constituted serious physical harm was a matter of trial strategy. Even debatable trial tactics do not establish ineffective assistance of counsel. State v. Hoffner,102 Ohio St.3d 358, 365, 2004-Ohio-3430, 811 N.E.2d 48; State v. Clayton
(1980), 62 Ohio St.2d 45, 402 N.E.2d 1189. We note that Earnest expressly agreed to the stipulation.
 {¶ 37} Third, Earnest argues that his attorney twice failed to subpoena a key witness, Norvain Morgan, resulting in that witness' failure to testify. Although Nystrom indicated to the court on June 30, 2003, that Morgan "had made statements to the effect that the alleged victim in this matter was the initial aggressor in the incident that happened," the record contains no offer of proof as to Morgan's anticipated testimony and how he has been prejudiced by his counsel's failure to secure his testimony. Without such a proffer, we cannot evaluate whether Earnest has suffered any prejudice as a result of his counsel's failure to subpoena Morgan. To the extent that this ineffective counsel claim depends upon evidence outside the record, the appropriate procedural vehicle for asserting this claim is a post-conviction proceeding, pursuant to R.C. 2953.21. State v.Gibson (1980), 69 Ohio App.2d 91, 430 N.E.2d 954; State v.Buckingham, Montgomery App. No. 19205, 2003-Ohio-44, at ¶ 21.
 {¶ 38} Finally, Earnest complains that his attorney failed to cross-examine Officer Mollohan. "The scope of cross-examination clearly falls within the ambit of trial strategy." Hoffner,102 Ohio St.3d at 365. In the present case, Earnest has failed to articulate how Nystrom's failure to cross-examine the officer prejudiced him. As the supreme court stated in Hoffner, "the decision to forgo additional cross-examination was likely predicated on defense counsel's desire to avoid reinforcing the state's evidence." Id. Upon review of the record, we find no basis to conclude that Earnest's counsel was ineffective in failing to cross-examine this witness.
 {¶ 39} Earnest's second assignment of error is overruled.
 {¶ 40} "III. Trial court abused it's [sic] discretion by not allowing a continuance for the appellant to present his witnesses."
 {¶ 41} As for the court's failure to grant a continuance, "[t]he grant or denial of a continuance is within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of that discretion." Schaefer v. Stephenson,
Miami App. No. 2001-CA-46, 2002-Ohio-398, citing State v.Sanders (2001), 92 Ohio St.3d 245, 276, 750 N.E.2d 90; State v.Jordan, 101 Ohio St.3d 216, 2004-Ohio-783, 804 N.E.2d 1, at ¶ 45. "An abuse of discretion implies that the trial court acted with an arbitrary, unreasonable or unconscionable attitude when denying the continuance." Id. "A court may not refuse to grant a reasonable recess for the purpose of obtaining defense witnesses when it has been shown that the desired testimony would be relevant and material to the defense." State v. Brooks (1989),44 Ohio St.3d 185, 195, 542 N.E.2d 636.
 {¶ 42} Earnest's trial was set to begin on June 30, 2003. At that time, the trial was continued to July 1, 2003, in order to allow Earnest's counsel to prepare his case more fully and because a witness, Norvain Morgan, had just appeared and made statements that Weaver may have been the initial aggressor. Trial began on July 1, 2003, at which time the state presented its case and Earnest testified on his behalf. After Earnest had completed his testimony, his counsel attempted to call Morgan to the stand The court ordered a brief recess in order to provide the state an opportunity to speak with Morgan, if he was willing to speak with the prosecutor, and to permit the state to prepare a cross-examination of him. When the court reconvened at 1:15 p.m., Morgan did not appear. The court continued the trial until 3:00 p.m. on July 24, 2003 — more than three weeks later — to conclude the trial. When the trial recommenced on July 24, 2003, Morgan again did not appear. Earnest's counsel indicated to the court that he had spoken to Morgan and had told him to be there, and that Morgan had agreed. After waiting for 50 minutes for Morgan to arrive, the court considered the case submitted.
 {¶ 43} We find no abuse of discretion in the trial court's failure to grant a continuance on July 24, 2003. As indicated by the trial court, the case had been continued once already for a three week period, the witness had been notified that trial would resume on July 24, 2003, and Moore again failed to appear. In light of the facts that the court had already continued the trial for the sole purpose of obtaining Morgan's testimony, that the parties and the court would have been inconvenienced by the additional delay and that there is no suggestion that Morgan's appearance would have been secured, it was not unreasonable for the court to refuse to grant a second continuance. Moreover, as discussed supra, Earnest failed to proffer the nature of Morgan's anticipated testimony and how it would have been relevant and material to the defense. See Evid.R. 103(A)(2). Thus, Earnest has failed to demonstrate how he was prejudiced by the trial court's denial of his continuance.
 {¶ 44} Earnest contends that the trial court should have instructed his counsel to subpoena Morgan and to force him to appear. We state simply that the responsibility for ensuring the appearance of defense witnesses falls on defense counsel's shoulders, not those of the trial court.
 {¶ 45} The assignment of error is overruled.
 {¶ 46} The judgment of the trial court will be affirmed.
Brogan, J. and Young, J., concur.