[Cite as *State v. Patton*, 2022-Ohio-3350.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 29384 |
| | : | |
| v. | : | Trial Court Case No. 2021-CRB-3858 |
| | : | |
| ANEMINEE PATTON | : | (Criminal Appeal from |
| | : | Municipal Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 23rd day of September, 2022.

. . . . . . . . . . .

STEPHANIE L. COOK, Atty. Reg. No. 0067101 & AMY B. MUSTO, Atty. Reg. No. 0071514, Assistant Prosecuting Attorneys, City of Dayton Prosecutor's Office, Appellate Division, 335 West Third Street, Room 372, Dayton, Ohio 45402
    Attorneys for Plaintiff-Appellee

CHRISTOPHER BAZELEY, Atty. Reg. No. 0077473, 9200 Montgomery Road, Suite 8A, Cincinnati, Ohio 45242
    Attorney for Defendant-Appellant

. . . . . . . . . . . . .

LEWIS, J.

**{¶ 1}** Defendant-Appellant Aneminee Patton appeals from her conviction on two counts of assault in the Dayton Municipal Court following a bench trial. Patton challenges the trial court's ruling excluding a statement made during Patton's testimony. For the following reasons, we affirm the judgment of the trial court.

### I.    Facts and Procedural History

**{¶ 2}** On November 1, 2021, Patton was charged with two counts of assault, in violation of R.C. 2903.13(A), misdemeanors of the first degree, for conduct alleged to have occurred on or about October 31, 2021. A bench trial was held on January 24, 2022.

**{¶ 3}** According to the testimony of the State's witnesses at trial, on October 31, 2021, Leslie Becker, Danyse Marvin, Devin, and Nick, were celebrating Halloween together in the Oregon district.[1] During the night, they also met up with Nick's girlfriend, Patton. Toward the end of the night, Nick and Patton were having relationship issues and Nick wanted a ride home to get his things, because he was planning to break up with Patton and move out of their shared residence that night. Devin, Becker, and Marvin gave Nick a ride home and then went to Taco Bell. While at Taco Bell, Nick repeatedly called them asking to be picked up. Based upon Nick's request, Becker, Marvin, and Devin drove back to Nick's house to get him.

**{¶ 4}** When they arrived at the residence, the front door was wide open, and they could hear screaming between Nick and Patton. They also saw items being thrown outside the residence onto the ground. While Becker and Marvin stayed in Devin's car,

---

[1] Neither Devin nor Nick testified at trial and no testimony was provided as to their last names, such that we will refer to them only by their first names.

Devin went inside to try to calm the situation. When Becker saw a phone thrown out of the house, she got out of the car to see whose phone it was; she recognized it as Devin's phone, which she picked up. Becker approached the house up to the porch to check on Nick and Devin and saw Patton sitting on the steps. Both Becker and Marvin testified that Becker asked Patton what was going on and if everything was ok.

{¶ 5} According to Becker, Patton was immediately aggressive and cursing at her when she got up to the porch area. Patton told Becker to leave, so Becker started walking back to the car. By then, Marvin had gotten out of the car to meet up with Becker, because she was concerned about Becker. Marvin and Patton exchanged words, and Patton hit Marvin in the face with a closed fist, causing Marvin to fall to the ground; Patton then struck Marvin again. Becker and Marvin managed to run away and get back into Devin's car.

{¶ 6} Once inside the vehicle, Becker called the police. After Becker hung up the phone with the police, Patton approached Devin's vehicle, opened the front passenger door, smacked Becker multiple times, and poked her in the eye. Becker did not have visible injuries but, according to Becker, it hurt and she was a little sore. Patton then tried to get into the back seat of the car where Marvin was sitting, but Marvin had locked the door to prevent Patton from entering.

{¶ 7} Shortly thereafter, the police arrived. According to the officers, Patton was overly aggressive, intoxicated, and generally belligerent. After Patton threatened to get a gun and shoot Becker and Marvin, Patton was arrested. The following day, Marvin had a visible injury on her forehead and a black eye that got worse over the following few

days.

{¶ 8}  Patton testified on her own behalf at trial.  She stated that on October 31, 2021, she and her friends were in the Oregon district, and she planned to meet up with Nick and his friends.  She and Nick had been together for about four years, but things were not going well, and she texted Nick telling him to get his stuff out of the house and that their relationship was over.  Patton got a ride home from friends but she did not have a key to get inside, so she contacted Nick to let her in.  When Nick arrived, Patton told him that he could not stay the night, but he could get his things and get out.

{¶ 9}  By the time Devin, Marvin, and Becker returned, Patton had thrown several of Nick's things out of the house, and Devin went inside to calm Nick down.  According to Patton, while she was on her porch, both Marvin and Becker started yelling at her from the car, and Patton told them that what was going on had nothing to do with them.  While they were yelling back and forth, Marvin and Becker got out of the car.  Patton told them to stay in the car and not to come on her property several times.  Patton claimed she was emotionally upset and felt threatened and scared by the other two women.  Patton testified that when Marvin and Becker got out of the car, they approached her in an unfriendly manner.  Patton claimed that Marvin, whom she did not know, was arguing with her, was the aggressor, and was using profanity.  Although Patton repeatedly told the two women to leave her property, they refused, so Patton told Marvin that she had one more warning to get off her property, but because "she wasn't going to leave," Patton hit Marvin one time above the eye and Marvin fell to the ground.  Patton stated that the two women then went back to the car while she went inside her house.

**{¶ 10}** According to Patton, while Patton continued to try to get Nick's things out of the house, Marvin and Becker started screaming at her again from their car, so Patton walked up to the car and opened Becker's door. The car was not on Patton's property but on the street in front of the house. Patton denied ever touching Becker but admitted she did put her hand up and was yelling back and forth with Marvin, who was sitting in the back seat.

**{¶ 11}** According to Patton, Marvin and Becker were never allowed to be at her house. While she acknowledged that they were Nick's friends whom he had invited over, it was only to pick him up and get his stuff. Patton confirmed that Marvin did not physically touch her in any way before Patton hit her, but she claimed that Marvin had verbally assaulted her. Even though Patton admitted to hitting Marvin in the face, she did not believe she had caused Marvin's black eye.

**{¶ 12}** At the conclusion of the bench trial, Patton was found guilty as charged. She was sentenced to 180 days in jail, with credit for one day served and the remaining time suspended, one year of basic supervised probation, an alcohol and drug assessment with any follow-up treatment, and anger management classes, and she was ordered to pay court costs. Per Patton's request, the trial court suspended her sentence pending appeal. Patton appeal.

### II. Analysis

**{¶ 13}** Patton's sole assignment of error states:

THE TRIAL COURT ERRED WHEN IT SUSTAINED THE STATE'S HEARSAY OBJECTION TO PATTON'S [TESTIMONY] WHICH

PREVENTED HER FROM ASSERTING HER DEFENSE.

{¶ 14} According to Patton, the trial court erred when it excluded a statement made during Patton's testimony based on a hearsay objection that precluded Patton from fully asserting her defense of self-defense.   We find no merit to her argument.

### III.    Standard of Review

{¶ 15} There has been a split of authority within the appellate districts on the appropriate standard of review regarding the admission of hearsay evidence, with some courts applying an abuse of discretion standard while others apply de novo review.   *See HSBC Bank USA, Natl. Assn. v. Gill*, 2019-Ohio-2814, 139 N.E.3d 1277, ¶ 6-10 (1st Dist.) (documenting a split between courts of appeals concerning the proper standard of review to apply when reviewing the admission of hearsay but concluding that an abuse of discretion standard is consistent with Supreme Court precedent).   Our district has been consistent in applying an abuse of discretion standard of review to the determination of the admissibility of hearsay evidence in both civil and criminal contexts.   *E.g., Abrams v. Abrams*, 2017-Ohio-4319, 92 N.E.3d 368, ¶ 31 (2d Dist.) ("We review rulings regarding hearsay under an abuse-of-discretion standard."); *State v. Hawkins*, 2d Dist. Montgomery No. 29013, 2021-Ohio-3373, ¶ 57 (applying abuse of discretion standard for review of admissibility of hearsay statements).

{¶ 16} The Supreme Court of Ohio has explicitly stated that "[o]rdinarily, we review a trial court's hearsay rulings for an abuse of discretion."   *State v. McKelton*, 148 Ohio St.3d 261, 2016-Ohio-5735, 70 N.E.3d 508, ¶ 97, citing *State v. Hymore*, 9 Ohio St.2d 122, 128, 224 N.E.2d 126 (1967).   *McKelton* clarified that evidentiary rulings that

implicate the confrontation clause, however, are reviewed de novo. *Id.*, citing *United States v. Henderson*, 626 F.3d 326, 333 (6th Cir.2010). *Hymore*, as relied upon in *McKelton*, applied the oft-cited rule that "[t]he trial court has broad discretion in the admission and exclusion of evidence and unless it has clearly abused its discretion and the defendant has been materially prejudiced thereby, this court should be slow to interfere." *Hymore* at 128. The Supreme Court has applied an abuse of discretion standard in other cases as well. *See, e.g., State v. Muttart*, 116 Ohio St.3d 5, 2007-Ohio-5267, 875 N.E.2d 944 (applying abuse of discretion standard in finding that child's hearsay statements were admissible under a hearsay exception); *State v. Dever*, 64 Ohio St.3d 401, 414, 596 N.E.2d 436 (1992) (holding that in cases in which there is hearsay that could be admitted under Evid.R. 803, 804, or 807, the trial court judge retains discretion to determine which hearsay exception, if any, is most appropriate to admit the evidence).

{¶ 17} The determination of whether a statement is deemed hearsay or whether an exception applies is necessarily determined based on the particular facts and circumstances of the case, which the trial court is in the best position to resolve. For example, the determination of whether a statement constitutes an excited utterance, which is an exception to the hearsay rule, requires the trial court to discern if the minimum criteria has been submitted by the proponent to show that the statement was "relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Evid.R. 803(2). As the Supreme Court of Ohio explained:

"It is elementary that the trial judge is to decide those questions of fact which must be decided in order to determine whether certain evidence is admissible. * * * In the instant case, the trial judge, in determining whether this declaration was admissible, necessarily had to decide certain questions of fact. If his decision on those questions of fact, as reflected in his ruling on the admissibility of this declaration, was a reasonable decision, an appellate court should not disturb it. In other words, we believe that the decision of the trial judge, in determining whether or not a declaration should be admissible under the spontaneous exclamations exception to the hearsay rule, should be sustained where such decision appears to be a reasonable one, even though the reviewing court, if sitting as a trial court, would have made a different decision." Thus, this court has established precedent holding that an appellate court should allow a wide discretion in the trial court to determine whether in fact a declarant was at the time of an offered statement still under the influence of an exciting event.

*State v. Duncan*, 53 Ohio St.2d 215, 219-220, 373 N.E.2d 1234 (1978), quoting *Potter v. Baker*, 162 Ohio St. 488, 500, 124 N.E.2d 140 (1955).

{¶ 18} In this case, the confrontation clause is not at issue. Following the precedent of the Ohio Supreme Court and our precedent, we apply an abuse of discretion standard in reviewing a trial court's hearsay ruling. *McKelton* at ¶ 97. "Abuse of discretion" has been defined as an "unreasonable, arbitrary, or unconscionable use of discretion, or as a view or action that no conscientious judge could honestly have taken."

*State v. Brady*, 119 Ohio St.3d 375, 2008-Ohio-4493, 894 N.E.2d 671, ¶ 23.   When applying the abuse of discretion standard, an appellate court must not substitute its judgment for that of the trial court.   *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621, 614 N.E.2d 748 (1993).   "The mere fact that a reviewing court would have reached a different result is not enough, without more, to find error."   *State v. Beechler*, 2d Dist. Clark No. 1999-CA-54, 2010-Ohio-1900, ¶ 67.

### IV.   Hearsay

{¶ 19} Defendants have a constitutional right in criminal trials to "a meaningful opportunity to present a complete defense."   *California v. Trombetta*, 467 U.S. 479, 485, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984).   However, "this constitutional right is not absolute and does not require the admission of *all* evidence favorable to the defendant." (Emphasis sic.) *State v. Swann*, 119 Ohio St.3d 552, 2008-Ohio-4837, 895 N.E.2d 821, ¶ 13.   "The accused does not have an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence." *Taylor v. Illinois*, 484 U.S. 400, 410, 108 S.Ct. 646, 98 L.Ed.2d 798 (1988).

{¶ 20} Evid.R. 801(C) defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered into evidence to prove the truth of the matter asserted in the statement."   Hearsay is generally inadmissible unless specifically provided for by the Ohio or United States Constitutions, Ohio statutes, Ohio evidence rules, or rules prescribed by the Ohio Supreme Court.   Evid.R. 802.   The Supreme Court of Ohio has found that "testimony which explains the actions of a witness to whom a statement was directed, such as to explain the witness' activities, is not

hearsay. Likewise, it is non-hearsay if an out-of-court statement is offered to prove a statement was made and not for its truth, * * *, to show a state of mind, * * * or to explain an act in question." (Citations omitted.) *State v. Maurer*, 15 Ohio St.3d 239, 262, 473 N.E.2d 768 (1984). Evid.R. 803 and Evid.R. 804 list several hearsay exceptions, such as present sense impression and statement against interest, while Evid.R. 807 specifically applies to hearsay objections in child abuse cases. *See generally* Evid.R. 803, 804, and 807.

## V. Patton's Statement

{¶ 21} During Patton's testimony, she discussed Devin, Marvin, and Becker's arrival at her house in Devin's car. The following exchange occurred that is the subject of Patton's argument on appeal:

THE DEFENSE: And so, were they saying things out of the car?

WITNESS PATTON: **Yeah so, I was a crazy b * * *, and you know I didn't need to be doing all that.** I told them to stay out of it. It[']s none of [their] business. Devin had then told them to stop yelling at me it [sic] not our [sic] business.

THE STATE: Objection You[r] Honor hearsay, ask that it be stricken.

THE COURT: Sustained[.]

THE DEFENSE: So, you can't talk about other things that people had said. So, then at some point Devin gets out of the car, is that right?

WITNESS PATTON: Right.

(Emphasis added.) Trial Tr., p. 75.

{¶ 22} Specifically, Patton challenges the exclusion of her testimony regarding what Marvin and Becker allegedly said to her while they were inside the car, i.e. the highlighted portion above. She does not claim on appeal that any of the other out-of-court statements made during that portion of her testimony were excluded in error. When the State objected to Patton's statement at trial, Patton provided no explanation to counter the hearsay allegation. Patton now claims on appeal that it was not hearsay because she "was merely attempting to show what Marvin and Becker said to her to show that her actions were taken in self-defense." Brief of Appellant, p. 5. Patton further contends that the exclusion of this testimony prejudiced her ability to present a complete defense.

{¶ 23} On its face, the statement appears to be hearsay, and there was no obvious hearsay exception that applied. Patton did not testify that she reacted to those statements in any way or explain how they affected her. She also did not establish a foundation for admitting them as excited utterances. Based on the testimony immediately following the excluded statement, Patton testified she just went about her business removing items from the home as she had prior to the statements being made. Had Patton established a better foundation for the admission of the statement, it is possible that it could have been admitted. However, under these facts, we do not find that the trial court erred in excluding the statements.

{¶ 24} The foremost problem with Patton's argument is that even if the statements were improperly excluded, Patton cannot establish any prejudice. Immediately following the above cited testimony in question, the following exchange occurred:

THE DEFENSE:   So, when [Devin] gets out the car and what happens.

WITNESS PATTON:   He talked to me for a second and then he goes in and kind of letting me know what he was going to do.   He went in to go [calm] Nick down and hopefully get him out of the house.   At this point I'm still putting stuff out of the house and [he's] in the house talking to Nick trying to calm him down.   I'm just still up and down the stairs bringing stuff out, bringing stuff out.   **So, the next time I end up on the porch the girls start yelling that again, and I was like this has nothing to do with you guys.**

THE DEFENSE:   What were they, if you remember, what were they yelling?

WITNESS PATTON:   **Just that I was a crazy b * * * and there was no reason for me to be doing that.   Just whatever just a whole bunch of crazy stuff.**   I didn't even know em [sic] I didn't even know why they had an opinion on the matter of what was going on between me and my boyfriend.

THE DEFENSE:   At some point they get out of the car, is that right?

WITNESS PATTON:   So yeah, at this point we are yelling back and forth they are in the car, and they start getting out of the car and I told them to stay in the car do not come on my property and I said it multiple, multiple, multiple times. * * *

(Emphasis added.) Trial Tr., p. 75-76.

{¶ 25} No objection to the above quoted testimony was made by the State.   Thus,

assuming arguendo that the trial court erred in sustaining the State's hearsay objection as to Patton's prior statements in question, the error was harmless, because the same testimony was later admitted into evidence. Therefore, the original exclusion of the testimony did not affect Patton's substantial rights. Evid.R. 103 establishes that an evidentiary ruling by a trial court that excludes certain evidence may not be the basis of a claim of error unless the person claiming that error can establish: (1) that a substantial right has been affected by the exclusion, and (2) an offer of proof as to the substance of the evidence has been timely made or is apparent from the record. *State v. Gilmore*, 28 Ohio St.3d 190, 191, 503 N.E.2d 147 (1986). "If a party claiming error is unable to establish the first requirement, the error is deemed harmless. If the party is unable to establish the second requirement, the error is deemed waived." *Campbell v. Johnson*, 87 Ohio App.3d 543, 551, 622 N.E.2d 717 (2d Dist.1993). For an error to affect substantial rights of a defendant, the error must have been prejudicial, meaning that it must have affected the outcome of the trial court proceedings. *State v. Fisher*, 99 Ohio St.3d 127, 2003-Ohio-2761, 789 N.E.2d 222, ¶ 7, citing *United States v. Oleano*, 507 U.S. 725, 734, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993).

{¶ 26} Because Patton's testimony was made prior to the objection, it is apparent from the record the substance of the evidence that was excluded. However, we cannot find that Patton's substantial rights were affected. Considering that the same testimony regarding the statements Marvin and Becker allegedly made while still in the car was presented by Patton immediately after the objection at issue, the trial court heard the evidence and considered it in determining Patton's guilt. *See State v. Conway*, 108 Ohio

St.3d 214, 2006-Ohio-791, 842 N.E.2d 996, ¶ 123 (finding that exclusion of the defendant's expert witness's testimony and exhibits did not restrict the defendant's ability to present a defense or affect his substantial rights where the information the defendant sought to enter was admitted by testimony of other witnesses). In light of Patton's permitted testimony and all other evidence adduced at trial, Patton was not prevented from producing evidence in support of her defense, and the outcome of the trial would not have changed if the trial court had overruled the State's objection. Accordingly, her assignment of error is overruled.

### VI. Conclusion

{¶ 27} Having overruled the sole assignment of error, the trial court's judgment will be affirmed.

.. . . . . . . . . . . .

TUCKER, P.J. and DONOVAN, J., concur.

Copies sent to:

Stephanie L. Cook
Amy B. Musto
Andrew D. Sexton
Ashley Thomas
Christopher Bazeley
Hon. Mia Wortham Spells