[Cite as *State v. Booker*, 2026-Ohio-1673.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | C.A. No. 30549 |
| Appellee | : | |
| | : | Trial Court Case No. 2024-CRB-3726 |
| v. | : | |
| | : | (Criminal Appeal from Municipal Court) |
| ALIVIA BOOKER | : | |
| | : | **FINAL JUDGMENT ENTRY &** |
| Appellant | : | **OPINION** |
| | : | |

. . . . . . . . . . .

Pursuant to the opinion of this court rendered on May 8, 2026, the judgment of the trial court is affirmed.

Costs to be paid as stated in App.R. 24.

Pursuant to Ohio App.R. 30(A), the clerk of the court of appeals shall immediately serve notice of this judgment upon all parties and make a note in the docket of the service. Additionally, pursuant to App.R. 27, the clerk of the court of appeals shall send a certified copy of this judgment, which constitutes a mandate, to the clerk of the trial court and note the service on the appellate docket.

For the court,

_____
RONALD C. LEWIS, PRESIDING JUDGE

TUCKER, J., and HANSEMAN, J., concur.

OPINION

ARVIN S. MILLER, Attorney for Appellant

ASHLEY THOMAS, Attorney for Appellee

LEWIS, P.J.

{¶ 1} Defendant-appellant Alivia Booker appeals from her conviction of violating a protection order. For the following reasons, we affirm the judgment of the Dayton Municipal Court.

## I. Facts and Course of Proceedings

{¶ 2} In November 2024, Sergeant Brian Hannah of the Dayton Police Department filed a criminal complaint against Booker alleging that on October 29, 2024, she committed the offense of violating a protection order, a first-degree misdemeanor in violation of R.C. 2919.27(A)(1). Booker pleaded not guilty.

{¶ 3} A jury trial was held in February 2025. Montgomery County Deputy Sheriff Louis Hammond testified first. As a deputy sheriff, he was responsible for serving protection orders on respondents. On July 3, 2024, he served Booker at her workplace with a copy of an ex parte protection order that Booker's mother had obtained against Booker the previous day. Deputy Hammond discussed the terms of the ex parte protection order with Booker and explained the things that she could not do. The order stated that it was effective until July 2, 2025.

{¶ 4} City of Dayton Police Officer Austin Carter was dispatched to an address on Shoup Avenue in Dayton on October 30, 2024. When he arrived, he witnessed Booker standing within a few feet of her mother. Officer Carter placed Booker into his police cruiser due to a police broadcast that called for her arrest. Officer Carter questioned Booker in his

cruiser, and she admitted that she had been in a car with her mother the previous day and they had an argument while they drove to Burger King. At the time Officer Carter questioned Booker, he was not aware that she had violated a protection order.

{¶ 5} Terry Rhea testified next. He knew Booker and her mother well. Booker moved into Rhea's residence on Shoup Avenue in August or September 2024, where she planned to stay until she found her own apartment. Rhea also had his two children living with him at that time. Booker subsequently asked Rhea to help move her mother's belongings into his house after her mother lost her apartment. Booker's mother moved in with Rhea and Booker around September or October 2024.

{¶ 6} Booker testified last at the trial. At the time she violated the civil protection order, she was 24 years old. The protection order obtained by her mother in July 2024 was the first time Booker ever dealt with a protection order. Deputy Hammond went over the protection order with her when he served her with it, but he did not read it to her word for word. She agreed that she was supposed to read the entire document, but she claimed that she did not. The protection order alerted her that there was a July 17, 2024 hearing. She attended the hearing with her grandmother, but her mother did not show up for the hearing. She recalled that during the hearing, the court told her that she would receive something in the mail, but she never received anything else from the court. When Booker left the July 17, 2024 hearing, she knew the protection order was still active.

{¶ 7} Booker received "a lot" of text messages and phone calls from her mother after the July 17, 2024 hearing, but she did not respond to them. Booker's mother worked for the same employer that Booker did, so Booker changed departments at her employment to avoid violating the protection order. Booker's mother eventually needed a place to stay, and she started coming over to Rhea's residence and staying for a couple of hours at a time

3

and then overnight.   Booker's mother moved into Rhea's house in September or October 2024 while Booker was living there.

{¶ 8} On October 29, 2024, Booker disregarded the protection order when she drove to Burger King with her mother.   When asked whether the protection order was still valid on October 29, Booker testified, "I didn't think, I didn't think it was but yes, it was."   Tr. 249.

{¶ 9} The jury found Booker guilty of violating a protection order.   On April 10, 2025, the trial court issued its judgment entry.   The trial court sentenced Booker to 180 days in jail, credited her with the 2 days she had already served in jail, and suspended the remaining 178 days of jail time.   The court also placed her on 6 months of probation.   Booker was ordered to pay court costs and a $100 fine, but the fine was suspended.

{¶ 10} On July 24, 2025, Booker filed a notice of appeal from the trial court's judgment.   The next day, she filed a motion to file a delayed appeal.   We sustained the motion, and the parties filed their respective briefs.

## II.    Booker's Conviction Was Not Against the Manifest Weight of the Evidence

{¶ 11} Booker's first assignment of error states:

THE CONVICTION OF ALIVIA BOOKER FOR VIOLATING A PROTECTION ORDER GRANTED TO HER MOTHER WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN VIOLATION OF HER DUE PROCESS RIGHTS GRANTED UNDER THE U.S. AND OHIO CONSTITUTIONS.

{¶ 12} The weight of the evidence concerns the inclination of the greater amount of credible evidence offered to support one side of an issue rather than the other.   *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), citing *Black's Law Dictionary* (6th Ed. 1990). "A reviewing court considering a manifest-weight claim 'review[s] the entire record, weighs the evidence and all reasonable inferences, [and] considers the credibility of witnesses.'"

4

*State v. Group*, 2002-Ohio-7247, ¶ 77, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist. 1983). A case should be reversed as being against the manifest weight of the evidence "'only in the exceptional case in which the evidence weighs heavily against the conviction.'" *Thompkins* at 387, quoting *Martin* at 175.

{¶ 13} Booker was convicted of a violation of R.C. 2919.27(A)(1), which provides that no person "shall recklessly violate the terms of . . . [a] protection order issued . . . pursuant to section 2919.26 or 3113.31 of the Revised Code." It was undisputed at trial that a protection order issued pursuant to R.C. 3113.31 was in place as of October 29, 2024, and that Booker's actions violated the terms of the protection order. The sole issue disputed at trial and raised by Booker on appeal is whether the State proved beyond a reasonable doubt that she acted recklessly. According to Booker, she did not act recklessly because she had a reasonable belief that the protection order was no longer in effect as of October 29, 2024.

{¶ 14} "A person acts recklessly when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that the person's conduct is likely to cause a certain result or is likely to be of a certain nature." R.C. 2901.22(C). "A person is reckless with respect to circumstances when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that such circumstances are likely to exist." *Id.* Based on our review of the record before us, we cannot conclude that the jury lost its way when it found that Booker recklessly violated the terms of a protection order.

{¶ 15} Deputy Hammond testified that he went over the terms of the protection order with Booker when he served her with a copy of it at her workplace. While Booker stated that Deputy Hammond did not read the protection order to her word by word, she could not recall what he covered with her and what he did not. She admitted that she was served

5

with a copy of the protection order.   Despite knowing that she should have read the entire protection order, she testified that she did not do so.

{¶ 16} A copy of the protection order was admitted into evidence as State's Exhibit 1. The cover page of the protection order contained a "**WARNING TO RESPONDENT/DEFENDANT**," which stated, in pertinent part:

> Only the Court may change the terms of this Protection Order.   The Petitioner/Alleged Victim/Protected Person cannot give you legal permission to change this Order.   If you go near the Petitioner/Alleged Victim/Protected Person, even with the person's permission, you may be arrested.   Only the Court may change or end this Protection Order.   Unless the Court changes or ends this Order, you may be arrested for violating this Protection Order.   **YOU ACT AT YOUR OWN RISK IF YOU DISREGARD THIS WARNING**.

(Emphasis in original.)   The protection order also stated that it was effective until July 2, 2025, unless extended by separate entry.   The sentence immediately following the statement of the protection order's duration provided, "**WARNING TO RESPONDENT: See the warning page attached to the front of this Order.**"   (Emphasis in original.)

{¶ 17} An additional warning was included on the penultimate page of the protection order.   This warning stated:

**NOTICE TO RESPONDENT**

**NO PERSON PROTECTED BY THIS ORDER CAN GIVE YOU LEGAL PERMISSION TO CHANGE OR VIOLATE THE TERMS OF THIS ORDER. IF YOU VIOLATE ANY TERM OF THIS ORDER EVEN WITH THE PROTECTED PERSON'S PERMISSION, YOU MAY BE HELD IN CONTEMPT OR ARRESTED.   ONLY THE COURT CAN CHANGE THIS**

6

**ORDER. <u>YOU ACT AT YOUR OWN RISK IF YOU DISREGARD THIS WARNING.</u>**

**{¶ 18}** The information in the protection order clearly put Booker on notice that her mother could not change the terms of the protection order. Rather, only the court could change or terminate the protection order. The warning on the front and penultimate pages of the protection order also made it plain that until the court changed or ended the protection order, Booker may be arrested if she violated the terms of the protection order and she acted at her own risk if she ignored the warning. Booker testified that she knew the protection order was still in place when she left the July 17, 2024 hearing. The protective order stated that it was effective until July 2, 2025. Booker also conceded that she never received anything from the court between July 17, 2024, and October 29, 2024, that informed her that the protection order had been changed or terminated. Therefore, the jury's finding that Booker recklessly violated the terms of a protection order was not against the manifest weight of the evidence. *See State v. Stacy*, 2023-Ohio-3942, ¶ 19 (11th Dist.) ("The protection order was issued by the domestic relations court and [defendant] received nothing from that court indicating that it had been removed. Given these circumstances, the verdict that [defendant] acted recklessly with respect to the existence of the protection order is sound.").

**{¶ 19}** Booker argues that her lack of prior experience with protection orders, her failure to read the entire protection order, and her mother's actions in contacting Booker after the July 17, 2024 hearing established that she had a reasonable belief that the protection order was no longer in effect as of October 29, 2024. However, even if the jury believed Booker's testimony that she did not read the protection order word for word, she was aware or should have been aware that her voluntary failure to read the order could result in violation

of the order.  *See State v. Gordon*, 2003-Ohio-6558, ¶ 12 (10th Dist.).  "Neither indifference, laziness, inattention, nor anger constitutes an excuse for failing to read court orders and comply therewith."  *Id.*  Further, the protection order warned Booker that she may be arrested if she went near her mother, even if her mother had given her permission.

{¶ 20} The evidence established beyond a reasonable doubt that Booker recklessly violated the terms of a protection order.  This is not the exceptional case in which the evidence weighs heavily against the conviction.   The first assignment of error is overruled.

### III.   The Trial Court's Ruling that Booker Could Not Testify About What Her Mother Had Told Her About the Protection Order Was Harmless Error

{¶ 21} Booker's second assignment of error states:

THE TRIAL COURT ERRED BY EXCLUDING AS HEARSAY EVIDENCE THAT ALIVIA BOOKER'S MOTHER TOLD HER THAT THE PROTECTION ORDER WAS NOT IN EFFECT WHEN THE STATEMENT WAS NOT MADE TO PROVE THE ASSERTED MATTER BUT RATHER TO EXPLAIN ALIVIA'S STATE OF MIND AND UNDERSTANDING.

{¶ 22} This assignment of error involves the trial court's ruling that prevented Booker from testifying about what her mother had purportedly told her that made Booker believe the protection order was no longer effective as of October 29, 2024.   The following exchange occurred at trial:

Q:  ALL RIGHT.  SO, AGAIN, THE DAY THAT YOU INTERACTED WITH OFFICERS ON OCTOBER 30TH, DID YOU BELIEVE THAT THE PROTECTION ORDER WAS STILL IN PLACE AT THAT TIME?

A:  NO.

Q:  OKAY AND CAN YOU TELL US WHY NOT?

8

A: MY MOM TOLD ME –

THE STATE: OBJECTION, HEARSAY.

THE COURT: SUSTAINED.

Tr. 225-226.

{¶ 23} A sidebar then followed during which the parties argued as to whether Booker's testimony about what her mom had told her was inadmissible hearsay. At no point during this sidebar did Booker's counsel proffer what Booker's testimony would be. For example, counsel did not proffer that Booker would testify that her mother told Booker that the protection order had been dissolved or terminated by the court prior to October 29, 2024. Rather, Booker's counsel focused on the fact that Booker's testimony about what her mother had said was not offered for the truth of the matter but instead was her recollection of events that led to her good faith belief that the protection order was not effective on October 29, 2024. During the sidebar, the trial judge seemed to assume that Booker was going to testify that her mother had told her that the protection order was no longer in effect. Tr. 227.

{¶ 24} After the sidebar concluded, the following exchange occurred:

Q: ALL RIGHT, MISS BOOKER, WE ARE JUST GOING TO BACK UP A LITTLE BIT JUST SO YOU CAN REMIND JURORS. SO, FAST FORWARD TO OCTOBER 30TH, OF 2024, DID YOU BELIEVE THAT THE PROTECTION ORDER WAS STILL IN PLACE AT THAT TIME?

A: NO.

Q: OKAY AND WHY NOT?

A: BECAUSE MY MOM TOLD ME –

THE STATE: OBJECTION.

THE COURT: SUSTAINED.

9

Tr. 229-230. Defense counsel then moved on to other questions, again without proffering what Booker's testimony would have been regarding what her mother had allegedly told her.

{¶ 25} Evid.R. 103(A)(2) provides, in pertinent part: "Error may not be predicated upon a ruling which . . . excludes evidence unless a substantial right of the party is affected, and . . . the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked." The purpose of a proffer under Evid.R. 103(A)(2) "is to assist the reviewing court in determining whether the trial court's exclusion of evidence affected the defendant's substantial rights." *State v. Conkle*, 2012-Ohio-1772, ¶ 35 (2d Dist.), citing *State v. Mullins*, 2007-Ohio-1051, ¶ 36 (2d Dist.). A defendant who fails to proffer the anticipated nature of excluded testimony "and how it would have been relevant and material to the defense" is left unable to demonstrate how he was prejudiced by the exclusion of that evidence. *State v. Earnest*, 2004-Ohio-4049, ¶ 43 (2d Dist.), citing Evid.R. 103(A)(2). Thus, a failure to make a proffer of evidence waives all but plain error. *State v. York*, 2018-Ohio-612, ¶ 33 (2d Dist.).

{¶ 26} Despite defense counsel not proffering the specific testimony Booker was going to provide, it appears the trial judge and counsel for the parties were all under the impression that Booker planned to testify that her mother had told her that the protection order was no longer in effect as of some date prior to October 29, 2024. Assuming this was the intended testimony, we agree with Booker that the trial court should not have excluded this testimony as hearsay. Everyone agreed at the time of trial that the protection order was still effective on October 29, 2024. Therefore, the testimony would not have been offered for the truth of the matter asserted. But our conclusion that Booker's expected testimony was not hearsay does not end our analysis.

10

{¶ 27} To constitute reversible error, a trial court's decision to exclude evidence must have affected a substantial right of Booker. *State v. Patton*, 2022-Ohio-3350, ¶ 25 (2d Dist.). "For an error to affect substantial rights of a defendant, the error must have been prejudicial, meaning that it must have affected the outcome of the trial court proceedings." *Id.*, citing *State v. Fisher*, 2003-Ohio-2761, ¶ 7, citing *United States v. Oleano*, 507 U.S. 725, 734 (1993).

{¶ 28} The evidence presented at trial established that Booker received a copy of the protection order, which clearly warned her that only the trial court could change or terminate the protection order. The order stated that it was effective until July 2, 2025. When Deputy Hammond served her with the protection order, he took the time to explain the protection order to her. Booker also kept a copy of the protection order and had the opportunity to review it word for word, although she testified that she did not do so. If Booker had been permitted to testify that her mother had told her that the protection order was no longer in place, this testimony would not have changed the uncontested facts that Booker knew that only the court could terminate or change the protection order and that Booker had not received anything from the domestic relations court prior to October 29, 2024, changing or terminating the protection order. Therefore, even if Booker had been permitted to testify that her mother had told her the protection order was no longer in effect, the other evidence presented at trial established beyond a reasonable doubt that Booker disregarded a substantial and unjustifiable risk that she was violating the terms of the protection order. To hold otherwise would ignore (1) all of the clear warnings contained in the protection order, (2) Booker's testimony that she knew the protection order could only be changed by the court, and (3) Booker's testimony that she never received anything from the court changing or terminating the terms of the protection order. Based on the particular record before us,

any error the trial court committed by excluding Booker's expected testimony about what her mother had told her was harmless.

{¶ 29} Finally, though neither party cited *Pepper Pike v. R.E.S.*, 2024-Ohio-6205 (8th Dist.), we believe it is important to highlight the differences between the facts before us and those presented in *R.E.S.* There, the defendant was convicted of violating a domestic violence civil protection order. At trial, the defendant attempted to introduce a copy of his divorce decree, which contained a provision stating that all restraining orders were dissolved. *Id.* at ¶ 14. The trial court precluded the defendant from introducing the decree because it was irrelevant evidence. The Eighth District disagreed, concluding that the divorce decree was relevant because the defendant claimed that he thought that the provision in the decree terminating restraining orders issued during the divorce also terminated the domestic violence protection order ("DVPO"). *Id.* at ¶ 17. The court explained:

> Here, appellant should have had the opportunity to show that he was not disregarding the known risk of violating a protection order because he did not believe that the order was still active. A legal document, like his divorce decree, that indicated that "restraining orders" are dissolved is certainly relevant to whether appellant recklessly violated the terms of the DVPO; the jury could have concluded that appellant's honest belief was that the DVPO had been terminated by the divorce decree and appellant was not reckless for failing to realize that the DVPO survived the divorce decree. Simply, the jury should have been allowed to decide the validity of appellant's claim in determining whether he acted recklessly when he emailed the district.

*Id.* at ¶ 21.

12

**{¶ 30}** Unlike the facts in *R.E.S.*, Booker did not receive anything from a court stating that a protection order had been dissolved. Apparently, Booker was going to testify that her mother had told her that the protection order was no longer in effect. Given the numerous warnings on the protection order that only the court could change or terminate the protection order and Booker's testimony that she never received anything from the court terminating the protection order, we cannot conclude that Booker's substantial rights were affected when she was prevented from telling the jury that her mother had told her that the order was no longer in effect. In essence, Booker's testimony would have been that she was not reckless in violating the protection order because the person who the protection order was protecting told her it was okay. But the protection order made it clear that even if Booker's mother gave Booker permission to violate the protection order, Booker could be held criminally liable if she violated the protection order.

**{¶ 31}** The second assignment of error is overruled.

### IV. Conclusion

**{¶ 32}** Having overruled the assignments of error, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

TUCKER, J., and HANSEMAN, J., concur.

13